992

## THE BERWINDGLEN.
### No. 613.

District Court, D. Massachusetts.
March 30, 1936.

G. Philip Wardner and Murray, Von Rosenvinge & Coffin, all of Boston, Mass., for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City, and Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., for libelee.

SWEENEY, District Judge.

This is a libel in admiralty to recover for personal injury suffered by the libelant while in the service of the libelee, and for maintenance and cure following that injury.

The facts are as follows: The libelant on August 3, 1932, was an able seaman aboard the Berwindglen, receiving as a wage $56.25 per month and found. On the date of the injury, the Berwindglen was alongside the dock at Bath, Me. As a means of boarding and leaving the vessel an ordinary 30-foot painter's wooden ladder, in good condition and in no wise defective, rested on the dock, and from there ran to the poop deck of the vessel about 20 to 25 feet above the dock. The ladder was at an angle, and was securely lashed with two lashings, one to hold it firm from side motion, and the other to prevent its going out at the base. A cluster light, shining at the top of the ladder, gave ample lighting for a person ascending or descending the ladder at night. The vessel was equipped with an accommodation ladder or gangplank which, however, was not in use, but was knocked down and lashed securely to the vessel. On the evening of August 3, 1932, the libelant left the vessel, by way of the painter's ladder, and went into the town of Bath, Me., to spend the evening. While ashore the libelant drank some intoxicating liquor, and at about 1:30 o'clock a. m. of August 4th returned to the ship in the company of two of its crew. Arriving at the ladder, the libelant was preceded by one of his companions, and followed up the ladder by the other. When the libelant was near the top of the ladder boarding the vessel, one of his shoes came off, and his companion in the rear and below him on the ladder suggested to the libelant that he would recover the shoe which had fallen to the dock. The companion started down the ladder to get the shoe, but in the meantime the libelant fell from the ladder, and struck the dock.

On the morning of the accident high tide was reached at 1:10 o'clock a. m. (Daylight Saving Time). For approximately an hour after 1:10 o'clock a. m. (D. L. S. T.) the tide was still at flood, and did not begin to ebb until after the accident had happened. The accident occurred at some time between 1:30 o'clock a. m. and 1:45 o'clock a. m. (D. L. S. T.).

A doctor was immediately called, and attempted to examine the libelant on the dock, but had to have him removed to the boat for examination. Several stitches were taken in the man's head that night. The next day X-rays were taken, and he was later sent to the Marine Hospital at Portland, Me., where he was under treatment from August 5th until November 5th for head injuries, headache, and dizziness. Upon his discharge from the hos-

pital the libelant returned to New York, where he received treatment at the Burke Foundation and other hospitals. No evidence was introduced to show whether the treatment accorded the libelant in New York was at his own expense or at the expense of some other person. The libelant was unable to resume his occupation as a seamen by reason of dizziness and headaches until June of 1933, when he sailed aboard a banana boat for Cuba. The libelant was never able to return to his occupation as an able seaman.

 The painter's ladder was a part of the vessel's equipment, and was the only available means for boarding and leaving the ship, and under the decision in The Admiral Peoples Case, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633, this court has jurisdiction of this matter in admiralty.

However, there is nothing in the evidence produced before this court to show that the vessel was unseaworthy, or that the libelant's injuries were due to the negligence of fellow servants or negligence of the owner, agent, servant, or employee of the vessel.

The libelant contends that as he was about to step from the ladder, the ladder slipped or jerked outward at the base, causing him to fall. He testified that he did not see any slack in the lashings before he ascended the ladder, but came to the conclusion that there must have been some slack because the ladder otherwise could not have jerked outward at the base. While I do not make a finding that this libelant was intoxicated, nevertheless he had drunk some intoxicating liquor, and this undoubtedly served to confuse him. As against his testimony of the ladder's slipping or jerking, there is the testimony of the companion that he did not notice any such happening, and further that if there had been a jerking or slipping he would have felt it. In the absence of direct testimony of slack in the lashings, I find it difficult to believe that the ladder did slip or jerk. It is to be noted that the tide had been rising and had not receded up to the time of the accident. Such a rise in the tide would have a tendency to bring the base of the ladder closer to the ship, and had there been a later ebb in the tide it is entirely possible that a slacking might have occurred. The evidence is clear, however, that the tide had not reached the ebb stage, and the libelant has offered no other explanation of how a slack in the lashings could have occurred. His reasoning as to the cause of his falling is not persuasive. Finding as I do no unseaworthiness in the vessel or failure on the part of the officers to procure and maintain proper and safe equipment, I must find for the libelee with respect to the personal injuries.

I am of the opinion that the libelant is entitled to recover for maintenance and cure, and that with the severe type of his injury, and the protracted convalescence, he would be entitled to such maintenance and cure up to May 31, 1933. It has been stipulated by counsel in open court that $75 a month is a fair amount for maintenance and cure, if it is found that the libelant is entitled to it. The libelant having actually received maintenance and cure while in the Marine Hospital at Portland from August 5, 1932, to November 5, 1932, he is entitled to recover from the libelee $75 a month from November 6, 1932, to May 31, 1933.