**FORD et al. v. PARKER.**

No. 2629.

District Court, D. Maryland.

Sept. 28, 1943.

Roszel C. Thomsen and Clark, Thomsen & Smith, all of Baltimore, Md., for plaintiffs.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

This is a proceeding to set aside an order of the Deputy Commissioner, United States Employees' Compensation Commission, requiring the complainant Ford as employer, to pay $1,000 into the special fund created by section 44(c) (1) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

The facts are briefly and succinctly stated by the Deputy Commissioner as a result of hearing at which the employer, Ford, was represented by experienced counsel, and no additional evidence has been submitted here.

On July 4, 1942 the tanker "S. S. Esso Augusta" was docked in navigable waters at the Recreation Pier in Baltimore City for repairs by the Bethlehem Steel Company which had leased the pier. Ford, the employer, had contracted with the ship to furnish watchman service while the ship was lying at the pier. Bernard Schnur was one of the watchmen so employed by Ford. The deck of the ship as she lay at the pier was 20 feet or more from the surface of the pier. The access to the ship from the pier was furnished by a long wooden ladder which was based on the pier and lashed to the deck gunwale of the ship. It was Schnur's duty to relieve the watchman on the ship's deck at 11 p. m. on July 4, 1942. About that time he began to ascend the ladder but when he was almost at the top he slipped and fell therefrom to the concrete dock below. From the injuries thus sustained he died on July 27, 1942. He left no dependents entitled to compensation under the Act but the employer's insurance carrier voluntarily paid total disability benefits for more than two weeks during the em-

ploye's incapacity, and subsequently paid $200 on account of funeral and burial expenses. The ladder giving access from the ship to the pier was the property of the Bethlehem Steel Company and was furnished by it for that purpose as was its customary practice. It also appeared from the testimony taken before the Deputy Commissioner that the ship's side was close to the dockside, the distance between the dock and the ship's side varying from two to three feet.

The Longshoremen's Act is, of course, a compensation act which is applicable "only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." 33 U.S.C.A. § 903. It also does not apply in the case of a master or member of a crew of any vessel, but it is not contended here that Schnur, the employe, was a master or member of the crew of the ship. As the authority of the Deputy Commissioner to make an award in this case was dependent upon the jurisdictional conditions that the injury to the employe must have occurred on navigable waters of the United States, and of such a nature that it could not validly be provided for by state compensation law, the complainants in this case contend that the finding of the existence of the condition that the injury occurred on navigable waters is a jurisdictional fact which must be determined *de novo* by this court and, therefore, the rules which generally prevail in this class of cases that the award made by the Deputy Commissioner will not be set aside if it is based on substantial evidence, should not control. This proposition was established by Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, and counsel for the Deputy Commissioner has not challenged that case as the present law upon the subject. It is, however, to be noted in this connection that no additional evidence has been submitted in this court and the matter must therefore be decided on the basis of the testimony submitted to the Deputy Commissioner which is included in the record.

The question to be decided is whether the federal or the state compensation law applies. Maryland has a workmen's compensation law, Code Md.1939, art. 101, § 1 et seq., which, for this case, differs in effect from the federal law only in that it makes no requirement for a payment by the employer into a special fund, where the deceased employe leaves no dependent, such as is required by the federal act, 33 U.S.C.A. § 944(c) (1). In the instant case the insurance carrier covered the employer's liability under both the federal and state compensation laws. For the purpose of determining jurisdiction, compensation acts are treated as delictual rather than contractual. Thus the ordinary test between their respective applicabilities is the test of admiralty jurisdiction in tort cases. The familiar general rule for admiralty jurisdiction is that the place where the tort occurs controls. Thus if the tort occurred on navigable waters the admiralty has jurisdiction, with the possible exceptions that the activities must have been of a maritime nature, and also in that very limited class of cases where although the injury occurred on navigable waters, the Supreme Court has held that the state law should be operative because the particular activities were of a purely local nature having no necessary maritime feature. Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008; Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. ——; Frankel v. Bethlehem Fairfield Shipyard, D.C., 46 F.Supp. 242, 250, Id., 4 Cir., 132 F.2d 634; Robinson on Admiralty, § 10, p. 70 et seq.

This is one of the so-called "ladder or gangway cases" which in the past have frequently been considered by the courts with respect to the boundary line between federal and state jurisdiction, in both tort and compensation cases with some divergence in results. See Robinson on Admiralty, pp. 84-86. What was said by Chief Justice Hughes in The Admiral Peoples, 295 U.S. 649, 651, 55 S.Ct. 885, 886, 79 L.Ed. 1633, is equally applicable here: "This is one of the border cases involving the close distinctions which from time to time are necessary in applying the principles governing the admiralty jurisdiction. That jurisdiction in cases of tort depends upon the locality of the injury. It does not extend to injuries caused by a vessel to persons or property on the land. Where the cause of action arises upon the land, the state law is applicable."

In that case certiorari was granted by the Supreme Court to settle asserted conflict of decisions on the point. Prior to the decision in that case the rule which had

been very generally but not universally applied was illustrated by the case of The Atna, D.C., 297 F. 673, and The Brand, D.C., 29 F.2d 792. In the former, 297 F. at page 675, it was said by District Judge Cushman: "When a person is injured in passing over a ladder connecting a vessel with the shore, the admiralty has jurisdiction if he is injured, that is, wronged, before he is entirely free from the ship and has safely reached the shore. If he is passing from the shore to the ship, the admiralty has not jurisdiction until he has reached the ship, and is entirely separated from the shore."

But since the decision in The Admiral Peoples, supra, all the federal cases which I have noted have taken the view that the rule furnishing the test as to jurisdiction has now been changed to the effect that the ladder or gangway, furnishing ingress to or egress from the ship, has been regarded as a part of the ship's equipment and therefore passengers or employes using it for either ingress or egress are considered to be at the time within the admiralty jurisdiction.

In The Admiral Peoples case the court was dealing with a libel *in rem* against the ship by a passenger who sustained personal injuries in traversing a gangplank from the vessel to the dock. Plaintiff alleged that the gangplank was defectively constructed or arranged in that there was an insufficient guardrail near the shore end of the gangway and an unobservable step down from the end of the gangway to the dock, in consequence of which the passenger fell from the gangway onto the dock sustaining injuries. In holding that the case was within the admiralty jurisdiction, Chief Justice Hughes said: "The basic fact in the instant case is that the gangplank was a part of the vessel. It was a part of the vessel's equipment which was placed in position to enable its passengers to reach the shore. It was no less a part of the vessel because in its extension to the dock it projected over the land. * * * Neither the short distance that she [the plaintiff] fell, nor the fact that she fell on the dock and not in the water, alters the nature of the cause of action which arose from the breach of duty owing to her while she was still on the ship and using its facility for disembarking." See Minnie v. Port Huron Terminal Co., 295 U.S. 647, 649, 55 S.Ct. 884, 79 L.Ed. 1631.

In The Shang Ho, D.C., 13 F.Supp. 632, affirmed, 9 Cir., 88 F.2d 42, certiorari denied under the title of Fan Shan Hang v. Prestlien, 301 U.S. 705, 57 S.Ct. 938, 81 L.Ed. 1359, the court dealt with a case where a longshoreman who was walking from the dock to the vessel fell from the gangplank. The case was a libel *in rem* against the ship for negligence. The Circuit Court of Appeals said: "The first contention is that the admiralty court had no jurisdiction because of the fact that the injuries received by the appellee were received by him in the fall to the dock and that he was going to and had not yet reached the ship's side at the time the gangplank fell. It is settled by a recent decision of the Supreme Court (The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633) that the gangplank is part of the ship when it is being used for the purpose of furnishing ingress and egress to and from the ship. In view of this recent decision of the Supreme Court, it is unnecessary to discuss the many earlier cases conflicting with this rule in relation to injuries resulting from use of the gangplank of the vessel. The court had jurisdiction."

In the very recent case of Brady v. Roosevelt S. S. Co., in the Supreme Court of the United States, 317 U.S. 575, 576, 577, 63 S.Ct. 425, 426, 87 L.Ed. ——: "The deceased was a United States Customs Inspector. While boarding the vessel on his official duties in July 1938 a rung of the ladder which he was climbing broke. The injuries which resulted caused his death. At the time of the injury the vessel was docked at a pier in New York City." It will be noted here that the deceased was proceeding from the shore to the ship. The court said: "We agree with the court below that this was a maritime tort over which the admiralty court has jurisdiction. Vancouver S. S. Co. v. Rice, 288 U.S. 445, 53 S.Ct. 420, 77 L.Ed. 885; The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633."

Carroll Stevedoring Co., Inc., v. United States, D.C.Mass., 25 F.Supp. 6, 7, was another ladder case with facts quite similar to the instant case except that the injured employe was there descending a ladder from the ship to the shore. "The vessel was docked with the port side of the ship alongside the dock, and an ordinary wooden painters' ladder was furnished to allow the longshoremen, officers, and crew to board and leave the ship. The ladder was about thirty feet long, rested on the dock, and leaned against the rail of the

ship at an angle which varied with the rise and fall of the tide." It was said: "No question of jurisdiction was raised by the libellee in this case. It would avail little to have done so. The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633; The Shang Ho, 9 Cir., 88 F.2d 42; The Berwindglen, D.C., 14 F.Supp. 992."

The Berwindglen, D.C., 14 F.Supp. 992, 993, also presented facts very similar to the instant case. There the libellant, a seaman, was returning from the shore to the ship. While ascending the ladder he fell therefrom to the dock. The court said: "The painter's ladder was a part of the vessel's equipment, and was the only available means for boarding and leaving the ship, and under the decision in The Admiral Peoples Case, 295 U.S. 649, 55 S. Ct. 885, 79 L.Ed. 1633, this court has jurisdiction of this matter in admiralty."

And in Richards v. Monahan, D.C.Mass., 17 F.Supp. 252, 253, a federal compensation case, the facts were practically identical with those of the instant case. There the employe was a machinist who was proceeding from the shore to the ship and was ascending a ladder which was the only method furnished for getting to the ship from the wharf alongside which the ship lay. He had "ascended the ladder to a point where he was over the water, and for some unknown reason fell therefrom upon the wharf and received a fracture of the skull and other injuries from which he died the next day." It was held that the deceased employe's injuries occurred upon the navigable waters of the United States and the award in favor of his dependent was sustained by the court although upon somewhat different reasoning from that of the prior cases.

In Robinson on Admiralty, pp. 84-86, after reviewing the ladder cases including those just referred to, the author says (note 132 at the bottom of page 86): "Thus, apparently all gangplank injuries fall to the admiralty."

Counsel for the complainants here seeks to distinguish the instant case from the recent ladder cases on the ground that in this case it appears the ladder belonged to and was furnished by the Bethlehem Steel Company, the lessee of the dock, and that it does not definitely appear in some of the cases just reviewed that the ladder did not belong to the ship; although it is contended in fact by adverse counsel that in Richards v. Monahan, supra, the ladder was furnished by the dock rather than by the ship. However, I deem this circumstance immaterial as bearing on the test of jurisdiction. No doubt it would be a relevant fact where the suit is against the ship for a tort based on negligence arising from the alleged defects in the ladder or gangway.

In this case the Deputy Commissioner found that the employe had ascended the ladder to a point where he was over the water when he fell from the ladder, and the award made seems to have been influenced importantly by that consideration. Complainants' counsel contends that the complainants are entitled to a finding of this fact de novo by the court. I think it must be admitted that the testimony on which the Deputy Commissioner made the particular finding affords at the best but a very uncertain basis therefor. But again I regard this circumstance as immaterial under the cases reviewed as affecting the test of jurisdiction.

■■ I am entirely in accord with the rule as now applied as it is simple and easily applied to situations which have heretofore been difficult of decision. And it seems entirely consistent with the real nature of the subject matter. Employes whose duties are on ships and require them to board and leave the ships are engaged in a purely maritime activity. The means of egress to and from the ship must be used by them in the performance of their duties. From time to time many of them have to be on and off the ship. In going to and fro in the performance of their duties it is reasonable that they should use and rely upon the safety of the only means of ingress to or egress from the ship as part of the ship's equipment. And as their work is so essentially maritime in its nature, it is no unreasonable extension of admiralty jurisdiction and no real invasion of common-law rights, to put such employes within the admiralty jurisdiction where they are using this means of access to the ships. See O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. ——, and Aguiler v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. ——. The rule as now stated also promotes certainty as to the proper forum for the employes' relief which heretofore has often been unfortunately uncertain. See Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. ——; Frankel v. Bethlehem-Fairfield Shipyards,

Inc., D.C., 46 F.Supp. 242, 249; Id., 4 Cir., 132 F.2d 634. It seems quite artificial if not legally arbitrary to make the test of the proper jurisdiction in these ladder cases to depend on the fortuitous and variable circumstance as to whether the employe is boarding or leaving the ship.

On this question of jurisdiction there is what is perhaps a quite significant paragraph in Davis v. Department of Labor, supra, which is, I believe, the latest case in the Supreme Court dealing with the particular subject. That was another close case requiring the court to determine the boundary line between the federal and state compensation acts. The proceeding there was under the state statute and it was upheld by the Supreme Court in reversing the Supreme Court of the State of Washington. The employe there had been a structural steel worker who was drowned in a navigable river while working for a construction company engaged in dismantling an abandoned drawbridge which spanned the river. A derrick barge was fastened to the bridge and another barge was tied to the derrick barge. At the time of the fatal accident the employe was working on the barge from which he fell into the stream where he was drowned. The application of the state statute was based on the so-called doctrine of purely local conditions not essentially affecting maritime matters. The court considered the possibility of the applicability of the federal compensation act and referring to cases arising thereunder said: "Faced with this factual problem we must give great—indeed, presumptive—weight to the conclusions of the appropriate federal authorities and to the state statutes themselves. Where there has been a hearing by the federal administrative agency entrusted with broad powers of investigation, fact finding, determination, and award, our task proves easy. There we are aided by the provision of the federal act, 33 U.S.C. § 920, 33 U.S.C.A. § 920, which provides that in proceedings under that act, jurisdiction is to be 'presumed, in the absence of substantial evidence to the contrary.' Fact findings of the agency, where supported by the evidence, are made final. Their conclusion that a case falls within the federal jurisdiction is therefore entitled to great weight and will be rejected only in cases of apparent error." [317 U. S. 249, 63 S.Ct. 229, 87 L.Ed. —.]

A word should be said with regard to the particular procedure in this case.

The defendant filed a motion to dismiss the complaint. One ground assigned is "that there is substantial evidence to support the finding of your defendant that the injury sustained by the employe Bernard Schnur was sustained on navigable waters of the United States." This point apparently runs counter to the decision in Crowell v. Benson, supra. As the complaint expressly alleges that the accident did not occur on navigable waters and as under Crowell v. Benson that constituted an issue to be decided here on the basis of the testimony *de novo*, I think technically the motion to dismiss must be and it is as such overruled. At the hearing I understood counsel to agree that if the motion to dismiss is overruled, it should nevertheless be treated as an answer, and so considered the case was submitted for final decision on the record made before the Deputy Commissioner, neither party desiring to offer further evidence.

For these reasons I have concluded that the complaint should be dismissed on the merits on final decision and it is now so ordered, with taxable court costs to be paid by the complainants.