**Ramon ERAZO**

v.

**M/V CIUDAD DE NEIVA and Flota Mercante Grancolumbiana, S. A., a body corporate.**

**Admiralty No. 4912.**

United States District Court
D. Maryland.

Jan. 10, 1967.

Sol C. Berenholtz, Solomon Kaplan and David P. Bernstein, Baltimore, Md., for libelant.

Robert H. Williams, Jr., Donald A. Krach and Niles, Barton, Gans & Markell, Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

Respondent has moved that the Court decline to exercise jurisdiction over this suit brought by libelant to recover for serious injuries sustained as the result of an explosion and fire aboard the M/V Ciudad De Neiva while she was leaving the Port of Baltimore. Respondent contends that Colombia is the proper forum.

It is undisputed that libelant, is a citizen of Colombia, that respondent owner of the vessel is a Colombian corporation, that the vessel flies the Colombian flag, and that libelant signed on the vessel in Cartagena, Colombia. On the other hand, it is undisputed that the explosion and fire which caused the injury occurred in the territorial waters of the United States, that the incident was investigated by the Coast Guard and the Baltimore Fire Department, that extensive repairs were made to the vessel at a yard in Baltimore, that libelant was hospitalized for about a year at the United States Public Health Service Hospital in Baltimore, and that substantial efforts have been expended by Baltimore counsel on behalf of libelant in the investigation of material facts and at repeated hearings involving libelant's right to receive treatment and surgery in the United States.[1]

■ It is agreed that the law applicable to the claims alleged in the libel is the Labor Law of Colombia. See Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). It is further agreed that the Labor Law of Colombia provides cash benefits akin to workmen's compensation payments, and if there is sufficient evidence that the industrial accident arose through the employer's negligence the employer is liable for ordinary damages, against which the compensation benefits must be credited. It is clear, therefore, that the principal issue between libelant and respondent employer, wherever the case may be heard, will be whether the injury to libelant was caused by respondent's negligence.

■ It is also clear that this Court has jurisdiction to hear and determine the case, although "it is ordinarily within the discretion of the District Court to refuse to retain jurisdiction * * *." Canada Malting Co. v. Paterson Steamships, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932).

The criteria to be considered by this Court in deciding whether or not it should exercise its jurisdiction are discussed in Lauritzen v. Larsen, supra, The Fletero v. Arias, 4 Cir., 206 F.2d 267 (1953), and Mpampouros v. S.S. Auromar, D.Md., 203 F.Supp. 944 (1962). As was stated in Anastasiadis v. S.S. Little John, 5 Cir., 346 F.2d 281, 283 (1965):

"* * * The real issue in Lauritzen * * * was choice of law, not the discretionary assumption of jurisdiction, but it seems generally agreed that the criteria set out in that opinion serve as an appropriate yardstick for a district court in deciding whether the United States courts should accept or decline jurisdiction of a controversy which is essentially foreign."

See also Romero v. International Terminal Operating Co., 358 U.S. 354, 382, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

■ In addition to the applicable law, the domicile of the parties, and the place of the contract of employment,

---

1. After extensive surgery to minimize the effect of the burns, libelant was repatriated to Colombia in June 1966, with the understanding that such action would not be considered a factor in deciding whether this Court should retain jurisdiction of this case.

questions of comity, convenience, and the practical possibility of libelant being able to enforce any rights he may have, should also be considered. This Court has ordinarily refused to retain jurisdiction where the law of a foreign country applied and both parties were citizens of that country, absent a showing that this was the only forum in which the libelant's rights could be fully protected.

In the instant case the alleged negligence is based upon conditions in the engine room before the explosion and fire. Adequate investigation of the facts will require an examination of various records of the Coast Guard and the Baltimore Fire Department, as well as of the repair yard in Baltimore where the allegedly defective equipment was removed. Many, if not all, of the witnesses who may have knowledge or opinions favorable to libelant are located in the Baltimore area; it would be impossible for libelant to take them to Colombia, and practically impossible financially for him to take their depositions, as well as the depositions of the doctors familiar with libelant's condition, treatment and operations after the accident. Counsel are agreed that libelant could retain an attorney on a contingent basis in Cartagena, and that a Labor Court as well as a Civil Court sits there. There is some question whether the contract of employment, quoted in note 2² in the margin, might require libelant's claim to be presented and heard in Bogota, 400 miles from Cartagena by air. Even if the case can be heard in Cartagena, the expenses of investigation in Baltimore and of proving any favorable facts which may be developed indicate that this federal court is the only forum in which libelant's rights

can, as a practical matter, be fully protected. The considerations which lead to that conclusion are similar to those in the *Fletero* case, where the Fourth Circuit said:

"We cannot say that there was any abuse of discretion on the part of the lower court in taking and holding jurisdiction of this case. The injury occurred while the ship was tied up in the dock at Norfolk and the injured seaman was in a Norfolk hospital. A survey of the vessel had been made in Norfolk and the survey and other proofs were available there to establish libellant's cause of action. The injured seaman had been discharged from the vessel without payment of a considerable balance of wages due him; and counsel whom he had employed lived in Norfolk and by their diligence had prepared the case so as to establish his right to recover substantial damages. There is nothing in law or in sound common sense which requires that, in this posture of affairs, the court throw libellant out of court and tell him to start over again in a distant jurisdiction, where counsel who had prepared his case could not appear for him, and where the proofs necessary to establish liability might not be obtainable." 206 F.2d at 270.

The fact that libelant's employment contract has a clause, see note 2 above, which attempts to limit jurisdiction to Colombian courts is not binding on this Court. Wm. H. Muller & Co. v. Swedish American Lines, Ltd., 2 Cir., 224 F.2d 806, 808 (1955).

Respondent has indicated that a primary objective in having the case tried in Colombia is to limit the award

---

2. The contract of employment included the following provision:

"THE EMPLOYEE does not recognize any competence or jurisdiction but only that of the Colombian Tribunals, and in consequence, THE EMPLOYEE, whenever he would wish to file a claim against THE COMPANY by means of judicial process and based upon the present Contract of Employment, shall not institute suit against THE COMPANY before any Judges and/or Tribunals distinctly (which are) not Colombians (Colombian Tribunals) * * * For claim cases before Labor Authorities and suits brought before Labor Judges and Tribunals based on the present contract, THE COMPANY's domicile is understood to be the City of Bogota, D.E."

of damages, if any, to an amount commensurate with the economic scale prevailing in Colombia, rather than the higher standard in the United States. Respondent argues that severe economic dislocation and hardship would follow if Colombian companies are forced to meet American standards of damage awards. Libelant, on the other hand, cites the case of Samad v. The Etivebank, E.D. Va., 134 F.Supp. 530, 545 (1955), where Judge Hoffman stated:

> "In determining the loss of earning power it is proper to consider what libellant would have earned in or near the locality where he resides, but this has been fairly well established by his admitted wages of $38 per month, the continuance of which is eliminated unless libellant is successful in securing employment of the type heretofore mentioned. However, in ascertaining the compensatory value of his pain and suffering, etc., it is well settled that this Court must apply the law of the place where the maritime tort is committed which, in this case, is the same as the law of the forum. 25 C.J.S., Damages, § 4(a), p. 462; The Gylfe v. The Trujillo, 2 Cir., 209 F.2d 386."

▮ Subsequent to the *Samad* case, however, the Supreme Court decided Romero v. International Terminal Operating Co., supra, and said:

> " * * * Although the place of injury has often been deemed determinative of the choice of law in municipal conflict of laws, such a rule does not fit the accommodations that become relevant in fair and prudent regard for the interests of foreign nations in the regulation of their own ships and their own nationals, and the effect upon our interests of our treatment of the legitimate interests of foreign nations. To impose on ships the duty of shifting from one standard of compensation to another as the vessel passes the boundaries of territorial waters would be not only an onerous but also an unduly speculative burden, disruptive of international commerce and without basis in the expressed policies of this country. The amount and type of recovery which a foreign seaman may receive from his foreign employer while sailing on a foreign ship should not depend on the wholly fortuitous circumstance of the place of injury." 358 U.S. at 384, 79 S.Ct. at 486.

See also Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense, 121 U.S.App.D.C. 338, 350 F.2d 468, 477 (1965). It appears, therefore, that this Court should give due regard to the economic standards of Colombia in fixing any damages which may be awarded in this case: so the difference in such standards does not justify refusing to retain jurisdiction in this case.

For the foregoing reasons, the Court hereby denies respondent's "motion to decline jurisdiction".