**Herman WEISSBACH, Plaintiff,**

v.

**MATSON NAVIGATION COMPANY, a corporation, Defendant.**

**No. 50216 OJC.**

United States District Court, N. D. California.

March 31, 1972.

---

See also D.C., 345 F.Supp. 1179.

Brobeck, Phleger & Harrison, Elbert G. Bennett, San Francisco, Cal., for defendant.

## MEMORANDUM FOR JUDGMENT

OLIVER J. CARTER, Chief Judge.

The case before the Court is a seaman's action in admiralty for injuries suffered as a result of a fall from a gangway of the S.S. Californian on January 7, 1968. The plaintiff contends that Matson Navigation Company, the owner of the ship, was negligent in that it did not provide adequate safety chains on the gangway or a safety net underneath it. This lack of caution allegedly made the ship unseaworthy. Plaintiff admits to being in a highly intoxicated state at the time of the accident, but contends that defendant had violated safety regulations designed to protect employees from accidents like the one that occurred. Plaintiff believes that his contributory negligence should not bar recovery, and that it should not affect defendant's liability. The plaintiff is permanently disabled and unable to work as a result of the accident, and seeks damages for lost past and future wages.

■■ The defendant has responded that plaintiff was the sole cause of his injuries and that the accident would not have occurred if plaintiff had not returned to the ship in his drunken condition. Defendant contends that plaintiff was guilty of gross contributory negligence that amounted to willful misconduct. The defendant further asks that the Court find that at the time of the accident the plaintiff was not in the scope and course of his employment. This assertion is without merit. It is a well established law of the sea that shore leave is a right of every seaman and is an elemental and essential necessity in his occupation and life. The plaintiff had to get back on ship to perform his duties, and it is certainly not unreasonable for defendant to anticipate that its employees might imbibe while off ship. The plaintiff was at the time of the accident employed and acting as

Jarvis, Miller & Stender, Hugh B. Miller, San Francisco, Cal., for plaintiff.

an employee of Matson Navigation Company.

There seems to be little doubt that the chains on the gangway rail were not taut at the time of the accident. Because of their condition, defendant was in violation of Title 29, Labor, Part 1504—Safety and Health Regulations for Longshoring, Section 1504 11(b). But it is the opinion of the Court that this violation neither caused nor contributed to the accident. Had the chains on the gangway railing been totally rigid, the plaintiff would still have fallen over them. The plaintiff placed himself in peril by being drunk and no amount of reasonable care on the part of the defendant could have protected plaintiff from his own folly. The plaintiff's contention that he was unconscious at the time of the accident is doubtful and, perhaps, irrelevant. The plaintiff cannot so lightly relieve himself of the responsibility for his own well being when he is drinking. The plaintiff went to a pier-side bar, and it is a deep rooted tradition of such establishments that they see to it that their clientele get back to their ships if they are drunk. The proprietor of the Seaport Cafe enlisted the aid of two gentlemen to perform this charitable act. Mr. Weissbach made no protests when help was forthcoming, and in fact he informed someone as to what ship he was on. Although inebriated, plaintiff was ambulatory and was not pushed off the gangway, but rather lurched over under his own power. The plaintiff cannot place the onus of such an act on the defendant. It is the opinion of the Court that the defendant could not have prevented the accident from occurring.

It seems obvious, however, that had there been a net under the gangway the plaintiff could have been spared his serious injuries. The defendant was in a position to rescue its employee and save him from serious harm. Title 29, Part 1504, Safety and Health Regulations for Longshoring, Section 1504 21(c), provides that a net shall be rigged under *and at the foot* of the gangway. (Emphasis the Court's) The pictures presented by both sides, the testimony of witnesses at the scene of the accident, and the injuries suffered by the plaintiff would indicate that such a net did not exist. The entire purpose of such a net is not to prevent people from falling from the gangway, but rather to prevent any harm from coming to someone who does fall. The defendant contends that the net is required only under the gangway itself and not the platform upon which the gangway rests. This argument is without merit. As the court stated in Aguilar v. Standard Oil, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107:

"And it is said that the shipowner should not be liable because he had no control over the premises [i. e. the dock]. But it was the shipowner's business that required the use of those facilities."

In the case at bar the gangway rested on the dock platform and, in fact, testimony indicates that plaintiff was *on* the gangway when he fell overboard. It would not be possible for the employees of Matson to get on board ship without stepping onto and crossing the platform. The burden of making safe this area falls to the shipowner as it is under its temporary control, and it is using it to support its gangway. The defendant should easily foresee an employee falling off the gangway and it is the sole purpose of the net to prevent serious injury from occurring should this happen. Here the plaintiff has fallen overboard because of his own negligence, and were the defendant merely responsible for seeing to it that no one fell overboard, the Court would find Matson free from liability. But the responsibility of the defendant does not stop with merely making the gangway safe; it must have a net under the gangway to prevent injuries to people who fall from it. Thus the lack of a proper net constitutes negligence on the part of Matson and significantly contributed to plaintiff's injuries.

The defendant relies, in part, upon In re Atlass, 350 F.2d 592 (7th Cir. 1965),

to show that it should be 100% free from liability in the present case. However, *Atlass* is clearly distinguished because in that case there were two ways onto the ship, and the plaintiffs voluntarily chose the more dangerous of the two routes and, while intoxicated, fell into the water and drowned. The court stated in part at page 600 that:

> "No amount of illumination could have saved [them] from their own folly. That could have been accomplished only by placing a cover over the gap (dock and ship) from end to end."

The defendant in this case not only could have placed a "cover", or here a net, between the dock and the ship under the gangway, but *it had a duty* to do so. The injuries in the case at bar were not solely the result, as in *Atlass,* of the plaintiff's misconduct and negligence; rather the misconduct of the plaintiff and the lack of a properly placed net by the defendant joined to cause Mr. Weissbach to be injured. Even though the plaintiff committed a negligent act, if defendant had not also been negligent, plaintiff could have been spared his injuries. The lack of a properly rigged safety net points the ominous finger of a lack of due care at Matson Navigation Company.

Therefore, this case having been tried, and the Court having heard evidence, and counsel having presented their oral arguments, and the matter having been submitted,

It is the judgment of the Court that the evidence establishes that the vessel was unseaworthy and that the defendant was negligent, and that the defendant is liable to plaintiff for the damages suffered, and that plaintiff, therefore, is entitled to an award of damages for the personal injuries suffered to his back and legs on January 7, 1968.

Plaintiff was marked permanently unfit for duty on June 25, 1968, and because of the accident will lose approximately $30,000 in lost future wages. Plaintiff is also entitled to $20,000 for pain, suffering and injuries caused by the accident. The injuries were—fractures of the low back, the left heel and the left wrist. Part of plaintiff's injuries are the result of a pre-existing injury to the left leg and ankle.

 The defendant has pleaded and offered evidence to establish that plaintiff is guilty of contributory negligence. The Court finds that plaintiff is guilty of contributory negligence to the extent of 60% of the injuries suffered by him. Plaintiff's recovery, therefore, will be reduced 60%, and thus he is entitled to recover for his lost wages in the amount of $12,000 and for his pain and suffering in the amount of $8,000. Judgment, therefore, will be awarded for plaintiff and against defendant in the sum of $20,000, together with his costs of suit incurred herein.

This memorandum will constitute the findings of fact and conclusions of law for this case, and the Court directs counsel for plaintiff to prepare a judgment in accordance herewith.