Joseph A. **BRENNAN**, Plaintiff,

v.

**MATSON NAVIGATION COMPANY,**
a corporation, Defendant.

No. C–69–365–OJC.

United States District Court,
N. D. California.

July 19, 1972.

Jarvis, Miller & Brodsky, Inc., David M. Blodgett, San Francisco, Cal., for plaintiff.

Brobeck, Phleger & Harrison, Elbert G. Bennett, San Francisco, Cal., for defendant.

## MEMORANDUM FOR JUDGMENT

OLIVER J. CARTER, Chief Judge.

Joseph Brennan brought this action for personal injuries against the Matson Navigation Company under General Maritime Law. He alleges that defendant's vessel, the S. S. Californian, was unseaworthy and that defendant was negligent in failing to have a safety net under the gangway. This action is a companion case to Weissbach v. Matson Navigation Co., 345 F.Supp. 1176, which was decided by the Court on March 31, 1971. In that decision the Court concluded that the defendant was negligent in failing to provide a safety net and that the vessel was unseaworthy as to Weissbach, a member of the crew. At the trial of this matter before the Court, a copy of the Weissbach trial transcript was introduced into evidence along with the testimony of the plaintiff and the plaintiff's doctor. Based on the findings made in *Weissbach* and the evidence introduced in this trial the Court finds the facts as follows.

On the night of January 7, 1968, Brennan stopped into a pier side bar where he had at least one drink. Already inside the bar was Mr. Weissbach who had been drinking during the afternoon and into the evening. The bartender asked Mr. Brennan and Mr. Turnquist, another patron, to assist the intoxicated Weissbach back to his vessel. Brennan and Turnquist agreed to help although neither of them was a crewmember of the S. S. Californian (then docked at Encinal Terminal, Alameda, California).

Plaintiff and Turnquist were able to transport Weissbach to the gangway of his ship. However, on attempting to assist Weissbach up the gangway, Weissbach lost control and fell over the side knocking plaintiff over the side in the process. Because there was no safety net, both men fell twenty feet to the camels below. A police officer reporting to the scene to aid plaintiff off the camels testified at the earlier trial that he

believed both Weissbach and Brennan were intoxicated.

At the time of this incident, Brennan was a member of the United States Navy. Consequently, he suffered no wage loss or medical expense from his injury. The medical evidence establishes that plaintiff did sustain a painful back injury. Although Brennan has recovered from the more serious aspects of his injury, he will continue to suffer some back pain and restriction in the type of activities in which he may engage.

## LACHES

■ In its answer and trial brief, defendant has raised the defense of laches. The accident occurred on January 7, 1968, and this action was filed on November 13, 1969. If this action is correctly brought under the General Maritime Law the doctrine of laches is appropriately raised. The applicable statute of limitation for personal injuries in the State of California is one year. CCP § 340(3). Although this one year period should be looked to as a guideline, strict application of such a statute to determine laches would be improper. Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). The test of laches is prejudice. Gutierrez v. Waterman SS Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Espino v. Ocean Cargo Line Std., 382 F.2d 67 (9th Cir. 1967). At the trial, the parties stipulated that there has been no prejudice to the defendant in this case. Accordingly, the Court in its discretion has concluded that the defense of laches is inappropriate in this case where no prejudice exists.

## UNSEAWORTHINESS DOCTRINE

■■ Plaintiff's first claim is that the defendant is liable for failing to provide a seaworthy vessel. The doctrine of unseaworthiness applies to those doing the type of work traditionally done by the ship's crew. United NY & NJ Sandy Hook Pilots Assoc. v. Halecki,

358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959). Plaintiff claims that helping a disabled crewmember back on to his ship is such work. The Court believes that similar efforts have been undertaken by ship's members in the past. However, the Court concludes that such an activity is not within the scope of the Supreme Court's definition of unseaworthiness in *Halecki, supra*. Accordingly, the doctrine of unseaworthiness is unavailable to a non-crewmember injured while aiding a drunk crewmember to board his vessel.

## NEGLIGENCE

Plaintiff's second claim is that defendant owes him a duty of reasonable care as a good samaritan aiding the disabled crewmember back to his vessel. Defendant contends that plaintiff was a trespasser to whom no duty of reasonable care was owed. "[T]he owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." Kermerec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). The defendant's negligence was established at the previous trial. See order of March 31, 1971 in Weissbach v. Matson, *supra*. The question here to be decided is whether plaintiff's presence on the vessel was in some way inimical to the defendant.

■ Although plaintiff had no pass to be on the S. S. Californian and was not a crewmember, the Court finds that his presence was not inimical to the defendant. The only reason plaintiff was on the vessel was to aid in the return of a drunken crewmember to his ship. This was a good samaritan type of gesture performed with the apparent intent of insuring Weissbach's safe return to his vessel. The Court finds that plaintiff's entrance onto the vessel in performance of this task was for the crewmember's and the shipowner's benefit. Plaintiff was acting as an implied invi-

tee as he helped Weissbach back to his bunk. Accordingly, defendant did owe a duty of reasonable care to the plaintiff which duty was breached by the defendant's failure to provide a safety net. (See order of March 31, 1971, *supra,* and Title 29, Part 1504, Safety and Health Regulations for Longshoring, Section 1504.21(c)).

Therefore, this case having been tried and the Court having heard evidence, and counsel having presented their oral arguments, and the matter having been submitted,

It is the judgment of the Court that the evidence established that defendant was negligent, and that the defendant is liable to the plaintiff for the damages suffered, and that plaintiff is entitled to an award of damages for the personal injuries suffered to his back on January 7, 1968.

Plaintiff is entitled to $10,000 for pain, suffering and injuries caused by the accident.

The defendant has pleaded and offered evidence to establish that plaintiff is guilty of contributory negligence. The gangway was narrow; it had a low chain railing and there was no safety net. Whether or not plaintiff's judgment had been affected by the drinking he had done, he should have been aware of the inherent danger of attempting to take a non-ambulatory drunken man up that gangway. Therefore, the Court finds that the plaintiff is guilty of contributory negligence to the extent of 25% of the injuries suffered by him. Accordingly, plaintiff's recovery will be reduced 25% and thus he is entitled to recover for his pain and suffering in the amount of $7,500. Judgment will be awarded for plaintiff and against defendant in the sum of $7,500, together with his costs of suit incurred herein.

This memorandum will constitute the findings of fact and conclusions of law for this case, and the Court directs counsel for plaintiff to prepare a judgment in accordance herewith.