Mrs. Ellen **KEARNEY**, Administratrix of
the Estate of Thomas P. Keane,
Deceased, Plaintiff,

v.

**SAVANNAH FOODS & INDUSTRIES,
INC.**, Irish Shipping, Ltd. and M/V
**IRISH ALDER**, Defendants.

Civ. A. No. 2982.

United States District Court,
S. D. Georgia,
Savannah Division.

Sept. 26, 1972.

Fred S. Clark, Griffin B. Bell, Jr., Brannen & Clark, Savannah, Ga., for plaintiff.

Spencer Lawton, Jr., Lawton, Sipple & Chamlee, Savannah, Ga., for Irish Shipping, Ltd. and M/V Irish Alder.

Julian H. Toporek, Falligant, Doremus & Karsman, Savannah, Ga., for Savannah Foods & Industries, Inc.

ORDER ON MOTION TO DECLINE JURISDICTION OF ACTION AS BETWEEN FOREIGN LITIGANTS

LAWRENCE, Chief Judge.

In this admiralty action the Irish administratrix of a deceased Irish seaman has filed a libel for his wrongful death [1] against the "Irish Alder", a vessel of Irish registry, and her owner, Irish Shipping, Ltd., a corporation of Eire. The administratrix joined as co-defendant Savannah Foods & Industries, Inc., a Georgia corporation. There was no arrest or attachment of the vessel.

It is alleged that the deceased was drowned in the Savannah River on August 13, 1970, when he fell from a portable catwalk used to cross over a conveyor belt that ran along the dock at shipside at the Savannah Sugar Refining plant. The complaint asserts that the catwalk was negligently maintained by Savannah Foods & Industries, Inc. in a rusty, decaying and dangerous condition and that same was attached to a rope ladder hanging from the railing of the vessel. It is alleged that while using the catwalk in returning to the ship the outer railing thereof collapsed with the result that the seaman was thrown into the River.

It is claimed by plaintiff that Savannah Foods & Industries, Inc. was negligent in failing to provide a crossover walkway in a safe condition. Irish Shipping, Ltd. is charged with maintaining an unseaworthy vessel in that the catwalk, which was attached to and part of the vessel, was negligently maintained.

The shipowner and the "Irish Alder" have filed a motion to dismiss on the ground that the administratrix is a resident of Ireland and that a forum is accessible there for adjudication of her claim against the Irish shipowner and ship.

■ The jurisdiction of the admiralty courts of the United States in cases involving foreign litigants is beyond dispute. Assumption of it depends largely on the discretion of the district court in which the libel is filed and should be exercised in favor of jurisdiction "unless special circumstances exist to show that justice would be better subserved by declining it." Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152. See also Poseidon Schiffahrt v. M/S Netuno, D.C., 335 F.Supp. 684.

In Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 an action was brought in a district court by a Danish seaman against a Danish shipowner for injuries received while aboard the vessel in Havana harbor. The real question was one of choice of law and not discretionary assumption of jurisdiction. The Supreme Court held that the law of Denmark controlled and that as the Jones Act conflicted with the policy and letter of Danish law it was not applicable. Romero v. International Terminal Operating Co. et al., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 involved a Spanish seaman who was injured in American territorial waters aboard a ship of Spanish flag and registry. He brought suit against his employer (and certain American defendants) on the law side of the district court under the Jones Act and also under general maritime law for unseaworthiness and negligence. The Supreme Court ruled that the Jones Act did not include foreign seamen and that neither that statute nor

---

1. The administratrix qualified as such in Ireland. She is the mother of the deceased. Under the general maritime law no action lay in admiralty for wrongful death. 2 Am.Jur.2d Admiralty § 127. However, the Supreme Court of the United States has now recognized the right to recover in such cases under general maritime law. See Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339; James A. George, "Wrongful Death and Survival Actions under the General Maritime Law: Pre-Harrisburg through Post-Moragne." Program Materials, Seminar on Admiralty Law, Atlanta, Ga., June 16, 17, 1972.

the general maritime law of the United States applied to the foreign shipowner. It held that the district court had jurisdiction under the "pendent jurisdiction" theory since a claim was properly alleged under the Jones Act. pp. 380–381, 79 S.Ct. 468. Spanish law was found to apply.

Jurisdiction as to the foreign parties in this case clearly exists under 28 U.S.C.A. § 1333. The parties do not disagree. Discretionary retention or non-retention thereof is the only consideration for the Court. In Erazo v. M/V Ciudad De Neiva, D. C., 270 F.Supp. 211 a citizen of Colombia who was a member of the crew of a Colombian vessel owned by a corporation of that nation was injured while at the port of Baltimore. The district court said it was "clear that this Court has jurisdiction to hear and determine the case, although 'it is ordinarily within the discretion of the District Court to refuse to retain jurisdiction . . . .' Canada Malting Co. v. Paterson Steamships, 285 U.S. 413, 52 S. Ct. 413, 76 L.Ed. 837 (1932)." See also Camarias v. M/V Lady Era, D.C., 318 F.Supp. 379, 381.

Although Lauritzen v. Larsen involved choice of law rather than discretionary acceptance of jurisdiction the criteria set forth have served as a yardstick for district courts in deciding to accept or decline a jurisdiction which is essentially foreign. Anastasiadis v. S. S. Little John, 5 Cir., 346 F.2d 281. The various factors discussed in *Lauritzen* are: (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the seaman; (4) allegiance of the defendant shipowner; (5) place of contract; (6) inaccessibility of foreign forum, and (7) law of the forum. In Gkiafis v. Steamship Yiosonas, 4 Cir., 387 F.2d 460 the Court found that the district judge had placed too much emphasis on factors which although relevant to the exercise of discretion in retaining jurisdiction are more pertinent to proper choice of law.[2] The Fourth Circuit reversed the lower court in refusing jurisdiction over the counts involving unseaworthiness and maintenance where a Greek seaman was injured at Baltimore aboard a vessel owned by a Panamanian corporation whose stock was held by citizens of Greece.

The fact that the alleged tort involved here occurred in or over the waters of the Savannah is conclusive neither of discretion as to retention of jurisdiction nor as to proper choice of applicable law. In a case such as this situs is more important because of its secondary than its primary effect. The occurrence of the fatality in this port means that there will be local witnesses who will testify. I am aware that there will also be such among the officers and crew of the "Irish Alder." In fact, the shipowner's brief states that the witnesses were all members of the Irish crew. It does not follow, however, that they will be more accessible in Ireland than in the United States. If this Court declines jurisdiction and plaintiff should sue the shipowner in the home forum, the attendance of seafaring witnesses would be almost as troublesome as it is here. In any event, depositions of officers and members of the crew would in all likelihood be used.

The alleged faulty condition of the catwalk is critical as to seaworthiness of the vessel as well as the alleged negligence of Savannah Foods & Industries, Inc. which apparently furnished that equipment. It is likely that there will be local witnesses who will testify as to that feature of the case. If the evidence should disclose that the deceased was contributorily negligent (as the answer of Savannah Foods & Industries, Inc.

2. In Mpiliris v. Hellenic Lines, Limited, D.C., 323 F.Supp. 865, aff'd. 5 Cir., 440 F.2d 1163, Judge Seals in speaking of the "seven factors of *Lauritzen*" said, "These are indeed murky waters," being "neither exclusive nor immutable." 323 F.Supp. at 871.

alleges)[3], the problem of apportionment of damages between the administratrix and shipowner will arise. The same issue could arise between the former and the American defendant. These questions should be resolved in one lawsuit and not in two different actions in two different countries.

■ Under the general maritime law as applied in the United States if both defendants should be adjudged at fault, each is primarily responsible for one-half the damages. Usually the decree provides that if one party should not respond, the other will be liable in full and entitled to contribution from the one who did not. Crain Brothers, Inc. v. Wieman & Ward Company, 3rd Cir., 223 F.2d 256; Pennsylvania Railroad Company v. Beatrice, 2nd Cir., 275 F.2d 209; Empire Seafoods, Inc. v. Anderson, 5th Cir., 398 F.2d 204, 217; American Independent Oil Company v. M.S. Alkaid, D. C., 289 F.Supp. 329. To decline jurisdiction over the foreign defendant might affect any right the local defendant may have as to contribution as well as any possible claim of the shipowner for indemnity.

■ Counsel for Irish Shipping, Ltd. argues that retention of jurisdiction by this Court will expose it to a "greatly increased liability under the very liberal American maritime law." This is not a valid objection to retaining jurisdiction. See Romero, supra, at 384, 79 S.Ct. 468 and Erazo v. M/V Ciudad De Neiva, supra. In the latter case the district court stated that it would give due regard to the economic standards of Colombia in fixing any damages and that consequently, any difference in standards would not justify declining jurisdiction.

■ To decline jurisdiction in this case would leave the action between the administratrix and the American defendant to be tried in this country. Cutting a lawsuit in two and litigating the halves in different countries strikes me as an anfractuous way to handle litigation crying for single rather than piecemeal solution. I conclude that the interests of justice will be more effectively, expeditiously and inexpensively served by retaining jurisdiction over the foreign parties.

I reach this result in spite of the existence of an adequate remedy in the courts of Ireland. In the shipowner's motion to dismiss it is alleged that there is an accessible forum for adjudication of the controversy. And there is one. From time immemorial there have been courts of admiralty in Ireland. 4 Benedict on Admiralty § 706, p. 404. The maritime law of that country possesses much in common with that of England since it was part of the United Kingdom. The British Merchant Shipping Act of 1894 and the Maritime Convention Act which was approved by Parliament in 1911 confirmed the right to sue in the admiralty courts for personal injury or death aboard a vessel caused by fault of the ship or shipowner. When Ireland became a "Free State" in 1922 several of the admiralty statutes remained in force. However, the law which presently governs maritime torts in that country is the "Civil Liability Act of 1961." While the legislation is couched in general terms, it clearly embraces actions for damages by a seaman injured because of negligence of a shipowner.[4] The law of the flag governs the controversy between the latter

---

3. The answer avers that the deceased was intoxicated at the time of the accident and did not exercise ordinary care for his safety. His failure to do so is claimed to have been the sole proximate cause of his death.

4. Before the Civil Liability Act was passed the distinction between suits in admiralty and actions at common law appears to have disappeared in Ireland. In a suit that arose under the Fatal Accident Act of 1956 (now a part of the Act of 1961) the Supreme Court of Eire held that although the action was founded on negligence at sea it was not a suit in admiralty but was a pure common law action. Higgins v. Irish Shipping Limited, The Irish Law Times (1945), LXXIX, 26.

and the representative of the deceased[5] and the Irish law is found in the Act in question.

Since contributory negligence may be an issue, this is as good a place as any for a preliminary glance at the Irish law on that subject. In The Meteor, Ir.Rep. 9 Eq. 567, a court in Ireland expressed doubt in 1875 as to whether the common law rule in England to the effect that contributory negligence does not bar a recovery in case of mutual fault applies in Admiralty. See Marsden on the Law of Collisions at Sea (9th ed., 1934) p. 29. Until the Civil Liability Act of 1961 contributory negligence seems to have barred a recovery in non-collision cases. The rule was changed by that comprehensive legislation. Under section 34 of the Act contributory negligence by an injured person does not defeat a recovery. It only reduces the amount recoverable. The damages "shall be reduced by such amount as the court thinks just and equitable having regard to the degrees of fault of the plaintiff and defendant." The judge or jury, as the case may be, ascertains the total damages if there had not been contributory negligence and reduces such amount by the percentage of fault attributable to the plaintiff. According to the "Explanatory Memorandum" which accompanied the draft of the Act, "[A]pportionment will be made on the balance of fault of each party, and contributory

negligence on the part of the plaintiff will no longer defeat him." [6]

This is the same rule adopted by the admiralty courts of the United States in which the doctrine of proportionate fault or comparative negligence is applied where a seaman is injured as the result of the unseaworthiness of a vessel. See June T., Inc. v. King, 5 Cir., 290 F.2d 404; Empire Seafoods, Inc. v. Anderson, 5 Cir., 398 F.2d 204, 214–216; Sams v. Haines, D.C., 299 F.Supp. 746, 751; Weissbach v. Matson Navigation Co., D. C., 345 F.Supp. 1176, 1179. The *Weissbach* case involved an injury to an inebriated seaman returning aboard ship by means of a defective gangway.

■ Foreign law is not judicially noticed by federal courts. It must be pleaded and proven. Benedict on Admiralty § 382. In the absence of proof, the controlling law is that of the forum. Lawlor v. Incres Nassau S.S. Line, Inc., D.C., 161 F.Supp. 764; Robinson v. SS J. Lanasa, 1958 A.M.C. 1980; San Rafael Compania Naviera, S.A. v. American Smelting & Refining Company, 9th Cir., 327 F.2d 581, 587. What I have said concerning the law of Ireland is at this point purely obiter and I do not pretend to be versed in the maritime jurisdiction of that nation.

■ This is also an opportune moment to anticipate another prospective issue in this case. Savannah Foods &

---

5. Hanna Nielsen, 1 Cir., 273 F. 171; McQuade v. Compania De Vapores San Antonio, S.A., D.C., 131 F.Supp. 365; United States Lines Company v. Eastburn Marine Chemical Company, Inc., D.C., 221 F.Supp. 881, 884; Sfiridas v. Santa Cecelia Co., S.A., D.C., 265 F. Supp. 252, 254; Serrano v. Empresa Lineas Maritimas Argentinas, *supra*, D.C., 257 F.Supp. 870, 872; Kontos v. S. S. Sophie C., D.C., 236 F.Supp. 664; 3 Norris, The Law of Seamen (3rd ed.) § 683, pp. 354, 358; 2 Am.Jur.2d Admiralty §§ 89, 90. The articles for the voyage of the "Irish Alder" contains no agreement specifying the governing law. *Cf., Lauritzen, supra*; Zielinski v. Empresa Hondurena de Vapores et al., D.C., 113 F. Supp. 93; Hatzoglou v. Asturias Ship-

ping Company, S.A., D.C., 193 F.Supp. 195; Anastasiadis v. S.S. Little John, *supra*, 346 F.2d 281. In the instant case the contacts of the alien shipowner with this country are not sufficient to differentiate the general rule as to application of the law of the flag. *Cf.* Hellenic Lines, Ltd. et al. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252. The fact that the deceased seaman signed on at Galveston is insufficient to confer jurisdiction under the Jones Act. Scognamiglio v. Home Lines, Inc., D.C., 246 F.Supp. 605.

6. I am indebted to Dr. Seán Ó hÉideáin, Counsellor of the Embassy of Ireland at Washington, for furnishing me with a copy of the Act, the Memorandum, and other pertinent material.

Industries, Inc. has filed a demand for a jury trial. It contends that the claim as to it is a civil action for damages not within the admiralty and maritime jurisdiction. That jurisdiction extends, in a proper case, to injuries from a fall from a gangplank while leaving or boarding a vessel. 2 C.J.S. Admiralty § 62; 2 Am.Jur.2d Admiralty § 86; Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633; Shangho, 9 Cir., 88 F.2d 42; Phoenix, D.C., 3 F.Supp. 1017; Ford et al. v. Parker, D.C., 52 F.Supp. 98; Robinson, Handbook of Admiralty Law in the United States (1939), pp. 84–86. If the evidence fails to show that at the time of the fatal accident the catwalk or stile was an integral part of the equipment used in getting on and off the "Irish Alder", admiralty jurisdiction probably does not lie under 28 U.S.C.A. § 1333. This is true both of the claim against the shipowner as well as its American co-defendant. In Victory Carriers, Inc. et al. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, the Supreme Court held that state and not federal maritime law applies in a case of injuries received by a longshoreman when a forklift, owned by the stevedore employer, fell on him on the dock while the equipment was being hoisted aboard by the ship's gear. "Nor, in the absence of congressional guidance, are we now inclined to depart from prior law and extend the reach of the federal law to pier-side accidents caused by a stevedore's pier-based equipment."[7] However, the trial-by-jury issue is not presently before me and no ruling thereon is made at this time. I will add that a bill pending in the United States Senate (S. 1876) dealing with reallocation of jurisdiction between State and Federal Courts and based on an American Law

Institute study would permit jury trials in almost every type of admiralty case. See 41 LW 2112.

The motion of Irish Shipping Limited that jurisdiction not be retained as to its controversy with the administratrix of the deceased seaman is overruled. Let such defendant serve a responsive pleading within ten (10) days, pursuant to Rule 12(a), F.R.Civ.P.

---

7. P. 204, 92 S.Ct. p. 421. In *Victory Carriers* the Supreme Court appears to have reaffirmed its historic view that the maritime tort jurisdiction of federal courts is determined by the "locality of the accident." pp. 205–206, 92 S.Ct., pp. 421–422. *Cf.* Peytavin v. Government Employees Insurance Company et al., 453 F.2d 1121 where the Fifth Circuit had rejected the "strict locality rule" and seemingly has adopted the test of whether the circumstances demonstrate any "substantial connection with maritime activities or interests." The history of the two conflicting theories is exhaustively reviewed in 3A Moore's Federal Practice, § 325[3], pp. 3521–41.