**Moussa DALLA, Plaintiff,**

v.

**ATLAS MARITIME COMPANY,
Defendant.**

**No. CV 80–4008–AAH.**

United States District Court,
C.D. California.

April 22, 1983.

Jack Haddad, Inc. by Herbert C. Ruben-stein, Los Angeles, Cal., for plaintiff.

Kresal, Young & Logan by Terry Ross, and William F. Daly, Long Beach, Cal., for defendant.

## DECISION AND ORDER

HAUK, Senior District Judge.

This matter is before the Court on a motion filed by defendant Atlas Maritime Company (hereinafter "Atlas") for certification of certain District Court orders for interlocutory appeal.

The orders for which certification is sought are: (1) The order entered on June 8, 1981, denying Atlas' motion to dismiss the complaint for failure to state a claim upon which relief can be granted; and (2)

The order entered on September 20, 1982, denying defendant's motion to dismiss the complaint on the basis of forum non conveniens.

For the reasons set forth below, Atlas' motion for certification is denied.

## FACTUAL BACKGROUND

In reviewing a motion to dismiss, this Court must take as true all material facts alleged in the complaint and resolve all doubts in favor of the pleader. *Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830, 834–35 (9th Cir.1980). We proceed to summarize the material facts here.

This action was initiated by plaintiff for damages for personal injuries sustained while employed by Atlas as a merchant seaman aboard its ship the "Star Proteus." Atlas is a Liberian corporation with headquarters in Greece and conducts substantial and continuous business within the United States of America. The Star Proteus is a vessel of Greek registry having substantial and continuous business contacts within the United States of America.

On the date of the accident, February 15, 1980, the Star Proteus was docked at Long Beach, California and was preparing to embark on a voyage to Richmond, California, with plaintiff standing nightwatch aboard the vessel from 12:00 midnight to 6:00 a.m., at which time he was relieved for his normal rest period until 12:00 noon. Sometime between 9:00 a.m., and 10:00 a.m., plaintiff was awakened and ordered to assist with work going on aboard deck.

At approximately 11:45 a.m., he was ordered to secure the number two crane without any assistance, and while he was doing so, the number one crane moved in an aft direction without any warning, so that the number one crane's gantry wheel almost totally severed plaintiff's leg at mid-thigh. He was hospitalized and treated at St. Mary's Hospital, Long Beach, California, and underwent five operations there to repair his leg.

This Court will first discuss each of its two orders denying the motions to dismiss,

so that these discussions can serve as the fundamental building blocks for its order denying the motion for certification for interlocutory appeal.

## I. ORDER DENYING DISMISSAL FOR FAILURE TO STATE A CLAIM

In this motion Atlas maintained that the plaintiff had no right, under applicable choice of law rules in Federal courts, to the application of the Jones Act,[1] 46 U.S.C. § 688, to his accident.

The relevant factors to be considered for maritime choice of law decisions, when a seaman brings suit in the United States against a foreign vessel or foreign vessel owner, have been set forth by the Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).

In *Lauritzen* the Supreme Court enumerated a seven-factor test to be considered by a District Court in determining whether the Jones Act applies: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured; (4) the allegiance of the defendant shipowner; (5) the place of contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum. 345 U.S. at 583–92, 73 S.Ct. at 928–33.

But the Supreme Court in *Rhoditis* limited this by holding that "[t]he *Lauritzen* test ... is not a mechanical one" and that "the list of seven factors in *Lauritzen* was not intended as exhaustive." 398 U.S. at 308–09, 90 S.Ct. at 1733–34. More importantly, the *Rhoditis* Court added a very important eighth factor to be considered by the Dis-

trict Court, that in order to effectuate the liberal purposes of the Jones Act a District Court must examine "the actual operational contacts that this ship and this owner have with the United States." *Id.* at 310, 90 S.Ct. at 1734. The importance of this "base of operations" test to the *Rhoditis* Court and to this particular case will become obvious upon thorough analysis.

Initially let us consider the seven test factors elucidated in *Lauritzen* in light of the facts here before us: (1) the wrongful act occurred in the United States (Long Beach, California); (2) the ship's flag is Greek; (3) although plaintiff is a citizen of Syria, he has resided in Long Beach since the date of the accident and is presently trying to obtain permanent residency status; (4) the shipowner is a Liberian corporation with its headquarters in Greece; (5) the employment contract is Greek, specifying that Greek law applies; (6) there is a foreign forum available to plaintiff; and (7) the present forum is in the United States.

Therefore, four of the seven factors favor the application of Greek law; the ship's flag is Greek; the shipowner is a citizen of Greece and Liberia; the employment contract is Greek with Greek law contractually applicable; and there is a foreign forum available to the injured seaman.

While this purely numerical recitation of the first seven factors seems to favor application of Greek law (ignoring the eighth *Rhoditis* factor) rather than the Jones Act, *Rhoditis* clearly mandates that these factors should not be analyzed in such a mechanistic manner. 398 U.S. at 308, 90 S.Ct. at 1733. The proper way of analyzing these factors was explained by the Ninth Circuit in *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82 (9th Cir.1980), holding that a Dis-

---

**1.** The Act provides:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representa-

tive of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C. § 688.

trict Court is *"required to determine the weight which should appropriately be given the various factors* in the factual setting of this particular transaction." *Id.* at 86 (emphasis added). In addition, the *Rhoditis* Court quoted with approval the language of the Second Circuit which specified that each factor must be "weighed" and "evaluated" in the context of the facts of each case and that this must be done "in the light of the underlying objective, which is to effectuate the liberal purposes of the Jones Act." *Rhoditis,* 398 U.S. at 309 n. 4, 90 S.Ct. at 1734 n. 4 (quoting *Bartholomew v. Universe Tankships Inc.,* 263 F.2d 437, 441 (2nd Cir. 1959)). We therefore proceed to analyze the seven factors guided by *Phillips* and *Rhoditis.*

■ We first determine the weight which should be given the factors favoring the application of Greek law. As set forth in *Lauritzen,* ordinarily the law of the flag should be accorded great weight in maritime choice of law, 345 U.S. at 585, 73 S.Ct. at 930, because ships in international maritime service visit so many different countries that the most consistently ascertainable law is the law of the ship's flag. While this may generally be true, the facts here compel this Court to give "law of the flag" much less weight, particularly since in *Phillips,* the Ninth Circuit sets the example for us.

In *Phillips,* seamen were injured while working on a submersible drilling vessel during the course of exploratory drilling in the territorial waters of Trinidad. The Court reasoned that the ordinary weight accorded the law of the flag did not apply when a vessel's operations were at a fixed location. 632 F.2d at 87.

This same rationale applies to the facts of our case here. Between October, 1978 and February 15, 1980 (the date of the accident), the Star Proteus visited at least fourteen ports in the United States, making an average of at least once-a-month operations in the territorial waters of the United States. The law of the flag should therefore be accorded much less than its ordinary weight because of the ship's extensive base of operations within United States territorial waters.[2]

For the same reason, this Court will give lesser weight to the allegiance of the shipowner and the fact that a foreign forum may be available to the injured seaman. In *Phillips,* the Ninth Circuit similarly gave the allegiance of the shipowner little weight. 632 F.2d at 87. Allegiance and available foreign forum are less important here because the shipowner voluntarily gave its vessel an extensive base of operations within the United States and should, therefore, expect that any activities connected with that ship while within United States territorial waters will result in American courts applying American law.

The last *Lauritzen* factor, the Greek employment contract and its provision for applicability of Greek law should be accorded virtually no weight by this Court.

In *Lauritzen* the place of contract was minimized, 345 U.S. at 589, 73 S.Ct. at 931–32, inasmuch as the place of contracting for a seaman is purely fortuitous since "[a] seaman takes his employment ... where he finds it; a ship takes on crew in any port where it needs them." *Id.* at 588, 73 S.Ct. at 931.

And the contractual applicability of Greek law should similarly be given minimal consideration here. American courts generally look unfavorably upon "boiler plate" provisions in adhesion contracts.[3]

> [It is] a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a "take it or leave it" basis, without opportunity for bargaining and under such conditions

---

**2.** From this fact it can also be logically inferred that most voyages of the ship either originated or terminated in the United States and that an overwhelming amount of its income was generated within the United States.

**3.** The term "contract of adhesion" was defined by the California Supreme Court in *Steven v. Fidelity & Casualty Co.,* 58 Cal.2d 862, 377 P.2d 284, 27 Cal.Rptr. 172 (1962), as follows:

Two prominent commentators on admiralty law state that American courts have generally afforded little determinative weight to contractual choice of law provisions, because of the disparity between the bargaining power of the employer and the bargaining power of the seaman. G. Gilmore & C. Black, *The Law of Admiralty* 476 (2d ed. 1975). This same kind of provision was relegated to slight relevance by the *Rhoditis* Court. 398 U.S. at 310, 90 S.Ct. at 1734.

Now what do we find that makes us lean to the application of American law here?

We do not rely at all heavily upon the fact that our District Court forum is in the United States. As the Supreme Court observed in *Lauritzen,* "[t]he purpose of a conflict-of-laws doctrine is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum." 345 U.S. at 591, 73 S.Ct. at 932. If we were to put any real weight upon the locus of our forum we would undermine the very purpose of fair and equitable choice of law doctrine because we would then permit fortuitous circumstances to play far too important a role in determining the applicable law. So also, the allegiance of the plaintiff has some, but not a great deal, of weight. Although plaintiff has resided in the United States since the date of the accident and has applied for permanent residency status, we assign this only a quite modest weight in relevancy because plaintiff is still a citizen of Syria.

The nature of the operations conducted by the vessel in this case leads us to place great weight upon the locus of the wrongful act. As indicated earlier, the Star Proteus frequently operated within the territorial waters of the United States and presumably earned a very large percentage of its income from business conducted within the United States. A shipowner who takes advantage of American laws and business to conduct extensive operations within United States waters, should expect that American law will control the activities of the ship and what happens on board while it operates within those waters. To do otherwise, would allow foreign shipowners the benefits of innumerable American business protections without demanding the responsibilities which necessarily complement and are correlative to such business protections.

Thus, even without considering the additional *Rhoditis* "base of operations" factor, the scale necessarily tips, however we look at it, in favor of applying the Jones Act. But, when we add our consideration of the "base of operations" to the balance, this scale leans heavily to application of the Jones Act.

As we have noted, in *Hellenic Lines v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the Supreme Court added the "base of operations" as a prime factor to be considered for a maritime choice of law decision. The *Rhoditis* Court held that all the other *Lauritzen* factors should be given minor weight when compared to the "base of operations" factor, if the alien owner has substantial and continuing contacts with this country. *Id.* at 310, 90 S.Ct. at 1734. The more substantial and continuous the contacts, the greater the weight of this factor.

The *Rhoditis* Court reasoned that a foreign shipowner who has extensive business operations in the United States should not have an advantage over American shipowners by being able to escape the obligations and responsibilities of the Jones Act, and this factor must be included to effectuate the liberal purposes of the Jones Act. *Id.*

Here we find that this "base of operations" factor must be given great, in fact decisive, weight. The vessel upon which this incident occurred had substantial and continuous business contacts with this country. Moreover, the owner operates other ships which conduct substantial and continuing business operations within United States territorial waters.

■ It follows that these principles mandate the application of the Jones Act rather than Greek law.

---

that the "adherer" cannot obtain the desired product or service save by acquiescing in the

form agreement. 58 Cal.2d at 882, 377 P.2d 284, 27 Cal.Rptr. 172.

## II. ORDER DENYING DISMISSAL FOR FORUM NON CONVENIENS

Atlas argues that this Court should dismiss plaintiff's action on the basis of forum non conveniens because the convenience of the parties and the ends of justice require that this Court refuse to retain jurisdiction of this case.

There are certain general rules which are applicable to all forum non conveniens motions. The District Court has broad discretion to retain, or to refuse to retain, jurisdiction and this discretion will not be disturbed unless abused. *Canada Malting Co. v. Paterson Steamships,* 285 U.S. 413, 418, 52 S.Ct. 413, 414, 76 L.Ed. 837 (1932). The Court's discretion must be exercised "with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931). Finally, it is the moving party who has the burden of making a sufficient showing to justify the District Court's refusal to retain jurisdiction, *Philippine Packing Corp. v. Maritime Co. of Phillipines,* 519 F.2d 811, 812 (9th Cir.1975).

The leading case enumerating the factors to be considered in a forum non conveniens motion is *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Gilbert* essentially prescribed that certain private and public interests were to be considered and weighed in determining a forum non conveniens motion. The Supreme Court warned that the plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendant.

### A. Special Approach to Forum Non Conveniens When American Law Applies

Three Courts of Appeal have held that if a District Court determines that American law governs the action, the District Court is generally duty-bound to retain jurisdiction and it is not appropriate to consider the other *Gilbert* factors. *Fisher v. Agios Nicolaos V,* 628 F.2d 308 (5th Cir.1980); *DeMateos v. Texaco Inc.,* 562 F.2d 895 (3rd Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978); *Antypas v. Cia. Maritima San Basilio, S.A.,* 541 F.2d 307 (2nd Cir.1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977).

While we know of no Ninth Circuit cases, the most recent Circuit authority, that of the Fifth, stated the holding in the following manner:

> In *Fisher v. Agios Nicolaos V* ... this court established that, prior to dismissing a case for forum non conveniens, a district court should ascertain if American or foreign law is applicable. [Citations omitted] If American law is applicable, then the American court should retain jurisdiction. Only when it is determined that foreign law applies is it appropriate to consider the *forum non conveniens* factors listed in *Gilbert Oil Corporation* [sic] in determining whether to retain jurisdiction acquired over a maritime suit with foreign factors.

*Chiazor v. Transworld Drilling Co. Ltd.,* 648 F.2d 1015, 1017–18 (5th Cir.1981).

The rationale behind this holding is that when a seaman has a cause of action based on American law, he comes by right into American courts. Once the scope of American law has been ascertained, a court is not free to selectively adjudicate the effects of that law. Rather, retention of the suit appears to be mandatory. *Fisher,* 628 F.2d at 315 n. 11 (quoting Comment, *A New Look at Lauritzen v. Larsen, Choice of Law and Forum Non Conveniens,* 38 La.L.Rev. 957, 958 (1978)).

An additional reason for this special approach to forum non conveniens can be found in certain statements made by the Supreme Court in the *Rhoditis* case. When a District Court has concluded that the Jones Act applies to a case mainly because of the extensive base of operations within the United States, this special approach is particularly applicable.

According to *Rhoditis,* a foreign shipowner who "engaged in an extensive business operation in this country, may have an advantage over citizens engaged in the same

business by allowing him to escape the obligations and responsibility of a Jones Act 'employer'." 398 U.S. at 310, 90 S.Ct. at 1734. In addition, the *Rhoditis* Court noted that the actual nature of the shipowner's operational contacts must be considered in order to effectuate the liberal purposes of the Jones Act. *Id.* Once a District Court determines that the Jones Act applies due to an extensive base of operations in the United States, it must retain jurisdiction because otherwise the shipowner could escape his responsibilities under the Jones Act and thus not effectuate its liberal purposes. This might occur because a District Court cannot compel a foreign court to apply the Jones Act after dismissing the case for forum non conveniens.

■ This Court is, therefore, constrained to retain jurisdiction and deny the motion to dismiss based on forum non conveniens.

### B. *Traditional Approach to Forum Non Conveniens*

In *Pain v. United Technologies Corp.,* 637 F.2d 775 (D.C.Cir.1980), the court outlined the four-step approach courts traditionally use in a typical forum non conveniens analysis: (1) determine if there is an alternative forum which possesses jurisdiction over the subject matter and the parties; (2) consider the factors of *private interests,* while weighing in the balance a strong presumption against disturbing plaintiff's initial choice of forum; (3) only if the private interests are in equipoise or nearly in equipoise, then determine whether the factors of *public interests* tip the balance in favor of a foreign forum; and (4) if the balance favors the foreign forum, ensure that the plaintiff can reinstate the suit in the other, foreign, forum.

(1) We assume that the courts of Greece are available as an alternative forum.

(2) *Gilbert* lists four primary private interests:

(i) *Relative ease of access to sources of proof:* Plaintiff was injured on board an ocean going vessel, while docked at Long Beach harbor. The problems of access to any witnesses who were fel-

low crew members, due to their frequent travels and changes of employers, exist whether the trial is in the United States or Greece. Access to any witnesses who were stevedores employed at Long Beach would be easier for a trial held in this Court. Plaintiff received all his medical treatment at a Long Beach hospital, and so access to medical personnel and records is easier here.

(ii) *Availability of compulsory process for attendance of unwilling witnesses:* In either forum, only employees of defendant or any witnesses who were residents of the forum could be compelled to attend. Since seaman employees of a shipping company are typically citizens of countries other than their employer's country and they frequently change employers, many of the seamen witnesses may not be amenable to compulsory process. On the other hand, since all or most of the medical and stevedore witnesses are residents of California, they would be amenable to process here in this Court.

(iii) *Cost of obtaining attendance of willing witnesses:* For the same reasons stated in (i) and (ii), the overall cost for attendance of witnesses would be less for a trial here in this Court.

(iv) *Possible view of premises:* The Star Proteus is constantly traveling the high seas, so personally viewing it at either forum would be impracticable. However, there would not be any substantial difference no matter which forum conducts the trial, if photographs of the ship are used (a more likely evidentiary method because the ship is so frequently and continuously at sea).

■ We need go no further because our determination of the overwhelming importance of private interests leads us to retain jurisdiction in our forum. It is unnecessary to consider public interests or the availability of the foreign forum, except to say such consideration would not change our view.

Starting with the strong presumption against disturbing plaintiff's initial choice

of forum, and utilizing the four part *Pain* approach, we clearly have the duty to retain jurisdiction in our forum based upon traditional grounds.

## III. MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL

An interlocutory appeal is permitted under 28 U.S.C. § 1292(b),[4] if the order is properly certified by the District Court upon a finding that: (1) it involves a question of law; (2) the question of law is controlling; (3) there is substantial ground for difference of opinion; and (4) an immediate appeal will materially advance the ultimate termination of the litigation.

The basic standard for certifying an interlocutory appeal was set by the Ninth Circuit in the case of *United States Rubber Company v. Wright,* 359 F.2d 784 (9th Cir. 1966), which held 28 U.S.C. § 1292(b) is to be used "only in *extraordinary* cases where decision of an interlocutory appeal might avoid protracted and expensive litigation." *Id.* at 785. This standard is based on Congressional legislative history, including the report of the Committee on Appeals from Interlocutory Orders of the District Courts, submitted to the Judicial Conference of the United States under date of September 23, 1953: "It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of." S.Rep. No. 2434, 85th Cong. 2nd Sess., 1958 U.S.Code Cong. & Ad.News, pp. 5255, 5260.

Here, we do not have a case extraordinary in nature, but rather an ordinary personal injury action which can be promptly determined by Court and jury. It necessarily follows that the motion for the certification for interlocutory appeal sought by defendant Atlas should be denied.

4. 28 U.S.C. § 1292(b) provides:
    (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

## ORDER

Upon the facts and law found and concluded in the foregoing Decision, and good cause appearing,

IT IS HEREBY ORDERED AND ADJUDGED:

1. The motion of defendant Atlas for certification for interlocutory appeal of the Court's Orders denying dismissal for failure to state a claim upon which relief can be granted and denying dismissal on the basis forum non conveniens be and the same is hereby DENIED.

2. The Clerk of this Court shall forthwith file and enter this Decision and Order, and serve copies thereof upon counsel of record herein.