Edwin A. JOSE, et al., Plaintiffs,

v.

M/V FIR GROVE, In Rem, et al., Defendants.

Civ. No. 90–6028–MA.

United States District Court,
D. Oregon.

Feb. 8, 1991.

Richard J. Dodson, Thomas E. Richard, Law Offices of Richard J. Dodson, Baton Rouge, La., John Buehler, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for plaintiffs.

Paul Wonacott, Kathleen A. McKeon, Wood Tatum Mosser Brooke & Landis, Portland, Or., for defendants.

## OPINION

MARSH, District Judge.

Plaintiffs are fourteen foreign seamen who filed this action seeking to recover back wages and penalties pursuant to 46 U.S.C. § 10313 as well as compensatory and punitive damages for common law claims of blacklisting, outrageous conduct, breach of the duty of good faith and fair dealing, duress, intentional infliction of emotional distress and fraud. In addition, plaintiff Edwin Jose and his wife, Augustine Jose, seek to recover damages for a maritime personal injury under the Jones Act, 46 U.S.C. App. § 688 and general maritime law of the United States. Both parties have filed cross-motions for dismissal and summary judgment of various claims and portions of this action. Because all motions raise the threshold issue of the law to be applied to this action, I have consolidated them for the purpose of this opinion. For the reasons that follow, defendants' motions to dismiss and plaintiffs' motion for summary judgment are denied.

## FACTUAL BACKGROUND

Plaintiffs are former crew members of the M/V FIR GROVE, employed by defendant Delica Shipping, S.A. (Delica) or defendant Inui Steamship Company, Ltd. (Inui), foreign shipping corporations. All plaintiffs are citizens of the Philippines. The Fir Grove is a vessel which flies the flag of the Republic of Vanuatu.

In late 1988, and early 1989, plaintiffs were recruited by Western Shipping Agency, Inc., in Manilla, for service aboard the Fir Grove. While at the Western recruiting office, plaintiffs allege that they signed individual twelve month employment contracts in which the wage rates were left blank. Thereafter, on January 25, 1989, plaintiffs joined the Fir Grove in Japan. Plaintiffs allege that, upon joining the vessel, they were each given a copy of the shipping articles and a copy of the International Transport Workers' Federation Worldwide Collective Agreement ("ITF Agreement").

Between January 25, 1989, and early January of 1990, the Fir Grove completed six voyages. On each voyage, the vessel embarked from Japan for the United States where it loaded shipments of logs and sailed back to Japan where the logs were discharged.

Plaintiffs allege that throughout this period defendants engaged in a fraudulent scheme in which they issued two monthly wage receipts to plaintiffs: one for the amount of wages specified in the ITF wage scale and one receipt for wages actually paid. Plaintiffs assert that they were paid approximately 20 percent of wages owing under the ITF scale. Plaintiffs contend that they could not, however, complain or demand full wages for fear of immediate discharge.

On January 24, 1990, on its seventh voyage to the United States, the Fir Grove was arrested in Coos Bay, Oregon. The original twelve seamen plaintiffs asserted claims for back wages totalling $299,431.00 and for penalty wages of $2.46 million accrued to January 19, 1990.[1] On January 30, 1990, defendants tendered $299,431.00 in back wages to the original twelve plaintiffs. On February 2, 1990, plaintiffs were

---

1. The "original twelve" seamen plaintiffs include: Edwin Jose, Orlando Osorio, Ascencion Conejar, Romulo Mejarito, Clemente Pagaduan, Antero Daug, Nicholas Coyoca, Carmelo Pagent, Danilo Penetrante, Alberto Dagtcuta, Basilio Santos and Goven Calibjo.

discharged in Coos Bay, Oregon, and repatriated shortly thereafter.

On February 7, 1990, two additional seamen, Asher Nianga and Virgilio Torriliza were added to the complaint. On February 14, 1990, defendants tendered $50,308.60 in satisfaction of their claims for back wages.

In addition, plaintiffs claim that defendants "blacklisted" them and rendered them unemployable by noting in their seaman books that they were "disabled from future employment," whiting out this notation, then noting that they were "repatriated at the seaman's request." Plaintiffs argue that these notations and corrections have disabled them from future employment. They seek compensatory damages for loss of future income, $250,000 each in emotional distress damages and $3 million each in punitive damages.

## MOTION HISTORY

On October 11, 1990, I found that plaintiffs' blacklisting claims did not fall within the definition of "maritime injuries" and thus, this court lacked subject matter jurisdiction over those claims. However, I concluded that the allegations of blacklisting derived from a "common nucleus of operative fact" with plaintiffs' wage claims such that plaintiffs would expect to try both claims in one judicial proceeding. Accordingly, I denied defendants' motion to dismiss and exercised pendent jurisdiction over those claims.[2]

Thereafter, defendants filed a second motion to dismiss plaintiffs' blacklisting claims on the basis that Philippine law governs the action under a choice of law analysis and that Philippine law confers exclusive jurisdiction over all claims arising out of the employer-employee relationship. Following the briefing on that motion, I directed the parties to answer the following question:

"Assuming Article 217 of the Philippine Labor Code provides original and exclusive jurisdiction over all money claims which arise out of or in connection with an employer-employee relationship, why doesn't this statute override U.S. admiralty jurisdiction over plaintiffs' claims for back wages and Jose's personal injury claim?"

In their response to my question, defendants clarified that they were not arguing that United States jurisdiction could be overridden by concurrent jurisdiction of the Philippine Labor Department, but rather that this court should decline to exercise jurisdiction in the interests of comity and under the doctrine of *forum non conveniens*. However, defendants included an additional challenge to this court's jurisdiction arguing that plaintiffs' wage claims are not brought "in good faith" and thus, an evidentiary hearing is required to establish subject matter jurisdiction over the wage claims before I may consider the exercise of pendent jurisdiction over plaintiffs' other non-wage related claims.

In the interim, defendants filed a separate motion to dismiss the Joses' claims for personal injuries arguing, again, that Philippine law should apply and the court should decline to exercise jurisdiction on the basis of *forum non conveniens*.[3] Five days after both of defendants' motions were taken under advisement, plaintiffs filed a motion for summary judgment seeking, *inter alia*, a declaration that the law of Vanuatu applies to this action, to the extent that U.S. law does not apply, under a choice of law analysis. In addition, plaintiffs moved for judgment on the grounds that the shipping articles are the controlling documents to determine the terms of plaintiffs' employment under Vanuatu law, and on the basis of collateral estoppel in light of Judge Tanner's findings and conclusions in *Raby v. M/V PINE FOREST*.

Because the issues regarding jurisdiction and choice of law have been introduced and addressed by both parties in a piecemeal

---

2. Because this action commenced prior to the date of the enactment of 28 U.S.C. § 1367, I shall continue to refer to "pendent" rather than "supplemental" jurisdiction.

3. Plaintiffs did not respond to the merits of this motion on the choice of law issue, but instead challenged it as untimely, abusive and argued that it was made for the purposes of harassing plaintiffs with paperwork.

fashion, I deemed it best to wait until the dust cleared to proceed further with this case. Accordingly, the following constitutes my opinion as to all pending dispositive motions.

## STANDARDS

### a. *Dismissal*

 Dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). For the purpose of the motion to dismiss the complaint is liberally construed in favor of the plaintiff, and its allegations are taken as true. *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1332 (9th Cir.1987).

### b. *Summary Judgment*

 Summary judgment is appropriate if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as matter of law. Fed.R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.1989).

 All reasonable doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valadingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Company of North America*, 638 F.2d 136, 140 (9th Cir.1981).

## DISCUSSION

### I. *Subject Matter Jurisdiction Over Wage Claims*

 Article III § 2 of the United States Constitution, as implemented by 28 U.S.C. § 1333, provides that district courts shall have original and exclusive jurisdiction of any civil case of admiralty or maritime jurisdiction. This court has jurisdiction over plaintiffs' claims for back wages and penalty wages pursuant to general maritime law and 46 U.S.C. § 10313. *See Jose v. M/V FIR GROVE*, opinion at p. 8–9 (filed August 13, 1990); *see also Su v. M/V SOUTHERN ASTER*, 767 F.Supp. 205, 207 (D.Or.1990) *citing Cuevas v. Reading and Bates Corp.*, 770 F.2d 1371, 1380 (5th Cir. 1985) and *Monteiro v. Sociedad Maritima San Nicolas, S.A.*, 280 F.2d 568, 574 (2nd Cir.), *cert. denied*, 364 U.S. 915, 81 S.Ct. 272, 5 L.Ed.2d 228 (1960).

Defendants concede that the jurisdiction of this court cannot be overridden by foreign concurrent jurisdiction over the same subject matter. However, defendants raise two arguments to challenge jurisdiction over this action in its entirety, and alternatively to all pendent claims. First, defendants challenge subject matter jurisdiction over plaintiffs' wage claims arguing their statutory penalty claims under § 10313 are not asserted in "good faith."

As noted by Professor Gilmore, counsel will often use what is now § 10313 to persuade a court to retain jurisdiction over an entire case, even where U.S. contacts are tenuous. G. Gilmore & C. Black, *The Law of Admiralty*, 479 (2d ed. 1975). Several courts have responded to this tactic by developing a threshold requirement that jurisdiction under U.S. wage statutes is only mandatory when claims are put forward "in good faith." *Id. See Abraham v. Universal Glow, Inc.*, 681 F.2d 451 (5th Cir.1982) (remand for determination of whether plaintiff's wage claim brought in good faith); *Morewitz v. Andros Compania Maritima, S.A.*, 614 F.2d 379, 381 (4th Cir.1980) (dismissal for insufficient show-

ing as to good faith of wage claims); *Dutta v. Clan Grahan*, 528 F.2d 1258, 1260 (4th Cir.1975) (jurisdiction over wage claims mandatory in absence of evidence of invalidity); *Bekris v. Greek M/V Aristoteles*, 437 F.2d 219 (4th Cir.1971) (dismissal); *Hernandez v. Naviera Mercante, C.A.*, 716 F.Supp. 939, 940–41 (E.D.La.1989) (because of mandatory jurisdiction over § 10313 claim court must first determine good faith); *Mihalinos v. Liberian S.S. Trikala*, 342 F.Supp. 1237, 1242–43 (S.D.Cal.1972) (good faith wage claim required to preclude abuse of federal court jurisdiction); and M. Norris, *The Law of Seamen*, § 1:7, at 25 (unfounded wage claim cannot be used to accept jurisdiction of personal injury claim).[4]

As aptly noted by Professor Gilmore, "good faith" is an "elusive concept." Gilmore and Black, *supra*, at 479. The issue involves a factual assessment and district courts are given wide latitude to determine validity of the claims. *Abraham*, 681 F.2d at 452; *Morewitz*, 614 F.2d at 381; *Hernandez*, 716 F.Supp. at 941. In *Dutta*, the Fourth Circuit noted that the fact that a plaintiff's wage claim may be "weak" may not defeat a finding of good faith. *Dutta*, 528 F.2d at 1260. The Court explained that "a claim may be asserted in good faith even though it ultimately may be found to be unmeritorious." *Id.; But see, Morewitz*, 614 F.2d at 382, n. 4 (prognostication as to probable success may be surer technique under certain circumstances).[5]

In *Vlachos v. M/V PROSO*, 637 F.Supp. 1354 (D.Md.1986), the court characterized the inquiry as follows: "[t]he question that this court must therefore answer is not whether plaintiff's claims are weak, but whether there is no way—or just about no way—in which they may succeed." *Id.* at 1360. In making this determination, the court focussed solely upon the validity of plaintiff's wage claims, noting that jurisdiction existed under the wage statute even though defendants may be able to show that there was sufficient cause for withholding wages. *Id.; See also Hernandez*, 716 F.Supp. at 942 (utilized analysis of *Vlachos* to determine jurisdiction). *Compare Mihalinos*, 342 F.Supp. at 1243 (good faith not established based on "bare and conclusory statements" in complaint that wages were owing).

If plaintiffs are required to make a preliminary showing establishing the "good faith" of their claims for back wages, I find that there is sufficient evidence in the record for me to conclude, without an additional hearing, that the present dispute over the terms of plaintiffs' contracts and the amounts owed or owing to them is genuine. In a previous motion for partial summary judgment against plaintiffs' fraud claims, I reviewed several volumes of depositions and affidavits of plaintiffs and concluded that "genuine issues exist as to the actual terms of plaintiffs' employment contracts and the amount of wages owing." *Jose*, opinion at 6–7,

---

**4.** The "good faith" requirement must be distinguished from the "sufficient cause" defense available to defendants pursuant to § 10313(g). Courts that have imposed a threshold showing of good faith have placed the burden of production and persuasion on the plaintiff *before* trial. *See Hernandez*, 716 F.Supp. at 941; and *Mihalinos*, 342 F.Supp. at 1242–3; *Cf. Dutta*, 528 F.2d at 1260 (good faith found where defendants failed to produce any evidence of invalidity).

In contrast, defendants appear to bear the burden of producing evidence at trial that unpaid wages were not withheld "without sufficient cause." *See Smith v. Western Offshore, Inc.*, 590 F.Supp. 670 (D.C.La.1984) (absent evidence of justification refusal considered without cause and plaintiffs entitled to penalty). However, once a defendant produces evidence of

justification, the burden of persuasion remains with the plaintiff to show that the withholding was not only wrongful, but also "arbitrary or unreasonable." *See Larkins v. Hudson Waterways Corp.*, 640 F.2d 997, 999 (9th Cir.1981).

If plaintiffs establish that the withholding was arbitrary, the next step is for the court to ascertain the amount of damages due under the statute. Norris, *Seamen*, at 550. This damage calculation is not discretionary, but requires the court to strictly apply the statute. *Griffin v. Ocean Contractors, Inc.*, 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982).

**5.** However, in *Morewitz*, plaintiffs had signed valid releases of their wage claims and thus, as a practical matter, there was no way their claims could succeed. *Morewitz*, 614 F.2d at 382.

(filed October 11, 1990).[6] Unlike the facts in *Morewitz*, this is not a case in which plaintiffs' wage claims are impossible as a practical or legal matter, but one in which the terms of employment and any justification for withholding payments is in dispute. Nor is this case analogous to *Mihalinos* in which the plaintiff attempted to rely solely upon the allegations in his complaint, without reference to supporting documents.[7] Thus, I find that plaintiffs' claims for past due wages are validly asserted and therefore satisfy the "good faith" requirement. Although their ultimate success on the merits remains to be seen, plaintiffs have met the threshold requirement for subject matter jurisdiction over their wage claims.

## II. *Choice of Law*

Defendants' second argument as to jurisdiction is directed against plaintiffs' non-wage claims for blacklisting and personal injury.[8] Defendants argue that I should not exercise pendent jurisdiction over these claims and should dismiss them in light of the Philippines' overriding interest in settling this dispute.[9]

Because defendants' argument raises the issue of dismissal under the doctrine of *forum non conveniens*, I must first determine the law to be applied under a choice of law analysis. *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446 (9th Cir.1990); *Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1479 (9th Cir.1986); *Pereira v. Utah Transport, Inc.*, 764 F.2d 686, 688 (9th Cir.1985), *cert. dismissed*, 475 U.S. 1040, 106 S.Ct. 1253, 89 L.Ed.2d 362 (1986). Defendants assert that the law of the Philippines should apply. Plaintiffs argue that the law of Vanuatu should apply to the extent that U.S. law is inapplicable.[10]

The assumption of pendent jurisdiction over plaintiffs' non-wage claims does not automatically mandate the application of U.S. law. *Hernandez*, 716 F.Supp. at 939. In disputes involving conflicts of international law, the test is governed by the *Lauritzen/Romero/Rhoditis* trilogy.[11] *Id.; Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1482 (9th Cir.1987), *cert. denied* 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988), mandate recalled and opinion amended on other grounds by 861 F.2d 565 (1988); *Phillips v. Amoco*, 632 F.2d 82, 83–4 (9th Cir.1980) *cert. denied* 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981); *see also* Gilmore and Black, *supra*, at 471–77.

In *Lauritzen*, the Supreme Court set forth the basic test for determining whether or not a U.S. court should exercise jurisdiction under the Jones Act for injuries sustained by a foreign seaman while serving aboard a foreign vessel, where his only contact with the U.S. forum was the sign-

---

6. In addition, I have held that genuine issues of material fact existed as to whether alleged defendants' delay in making full payment was "without sufficient cause" as provided by § 10313(g). *Jose*, opinion at 9 (filed August 13, 1990).

7. Indeed, the record is replete with computer printouts of calculations and recalculations of amounts plaintiffs claim are due and owing under the alleged ITF wage agreements.

8. Following defendants' motions to dismiss plaintiffs' claims for blacklisting and the Joses' claims for personal injury, plaintiffs filed a fourth amended complaint which added several common law claims. Although defendants' motions regarding jurisdiction were not specifically directed to those additional claims, my opinion as to jurisdiction should be considered controlling as to those claims as well.

9. It must be emphasized that the issue before me is *not* whether I have subject matter jurisdic-tion over plaintiffs' non-wage claims, but whether, if I find that U.S. law does not apply to plaintiffs' claims, I should exercise my discretion to maintain jurisdiction and apply foreign law. *See Pereira v. Utah Transport, Inc.*, 764 F.2d 686, at 688 (9th Cir.1985) and Gilmore and Black, supra, at 478.

10. In their motion for summary judgment, plaintiffs contend that the law of Vanuatu should apply to their wage contract and personal injury claims. Although plaintiffs did not specifically argue that Vanuatu and U.S. law should also apply to their blacklisting or other common law claims, I regard their motion on the choice of law as it applies to all claims.

11. *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).

ing of his shipping articles while he was in this country temporarily.[12] The Court found that the Jones Act was inapplicable to the plaintiff's claims considering the following factors: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance of the domicile of the injured; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum.

In *Rhoditis,* the Supreme Court noted that the *Lauritzen* list of factors was not exhaustive and therefore, the Court also considered the location of defendant's base of operations and whether defendant had "substantial and continuing" business contacts with the forum. 398 U.S. at 310, 90 S.Ct. at 1734.

The Supreme Court has emphasized that the *Lauritzen* test should not be applied mechanically, but flexibly and comprehensively with no one decisive factor. *Id.; Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 250, 102 S.Ct. 252, 263, 70 L.Ed.2d 419 (1981). The weight to accord each factor should vary with the factual setting. *See Zipfel,* 832 F.2d at 1482; and *Phillips,* 632 F.2d at 85.

 Although no one factor may be determinative, factors of greater importance have been identified as the domicile of the plaintiff, the base of operations and place of substantial contacts, the accessibility of the foreign forum, and the law of the flag. T. Schoenbaum, *Admiralty and Maritime Law,* 190–91 (1987) *citing Pereira,* 764 F.2d at 689; *see also* Gilmore & Black, supra, at 477 (*Lauritzen* suggests that little weight should be given to where shipping articles are signed or where an injury occurred).

**(1)** *The Place of the Wrongful Act*

**a.** *Personal Injury*

The first *Lauritzen* factor is of little help as applied to the Joses' claims for personal injuries since Edwin Jose was in-

jured on the high seas. *See Pereira,* 764 F.2d at 689.

**b.** *Blacklisting*

However, this factor is instructive when applied to plaintiffs' blacklisting claims. As I found in my opinion of October 11, 1990, "although the notations in plaintiffs' seamen books occurred on navigable waters, any harm they may have suffered as a result of that action has been on land with their attempts to seek future employment." Opinion at 11. Because the injury alleged is of an indefinite duration, and suffered predominantly in plaintiffs' homeland of the Philippines, this first factor implicates the application of Philippine law to plaintiffs' blacklisting claims.

**c.** *Back Wages*

Like the Joses' personal injury claim, the "place of the wrongful act," for the purposes of this claim, would be on the high seas when plaintiffs first claim that they were not paid wages in accordance with the terms of the shipping articles.

**(2)** *The Law of the Flag*

 This second factor is "of cardinal importance" and "should be accorded great weight in the choice of law analysis." *Villar,* 782 F.2d at 1480–81, *citing Lauritzen,* 345 U.S. at 584, 73 S.Ct. at 929 and *Pereira,* 764 F.2d at 689. However, the law of the flag can be overcome by a "heavy counterweight" such as a U.S. base of operations. *Hernandez,* 716 F.Supp. at 943.

The law of the flag in this case is the law of Vanuatu.

Plaintiffs argue that the law of the flag should be emphasized in this case over all other factors because the claims arise from a "blue water" occurrence. In *Zipfel* and *Phillips,* the Ninth Circuit noted that because the plaintiffs had been injured on stationary drilling rigs, as opposed to mobile ocean going vessels, the weight accorded to the law of the flag diminishes in

---

**12.** In *Romero,* the Supreme Court held that the *Lauritzen* test is not limited to Jones Act claims for personal injury, but is equally applicable to

claims brought pursuant to general maritime law. 358 U.S. at 382–83, 79 S.Ct. at 485–86.

value and instead, emphasis is placed upon the place of the injury and the location of the employment contract. *Zipfel*, 832 F.2d at 1482; *Phillips*, 632 F.2d at 85. In both cases, the court applied foreign law even though the law of the flag was that of the United States. Although I take note of the "blue water/territorial water" distinction, I disagree with plaintiffs' construction of that factor. There is nothing in *Zipfel* or *Phillips* to support plaintiffs' argument that the negative implication of those holdings should be applied to emphasize the law of the flag in this case.

In addition, plaintiffs argue that the law of the flag should be emphasized, at least with respect to plaintiffs' claims for back wages, because courts traditionally will apply the law of the flag to contract disputes. However, the cases relied upon by plaintiffs are both factually and legally distinguishable. In *McCullough v. Sociedad Nacional De Marineros*, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963) the Court upheld an injunction against the NLRB, finding that the NLRA did not extend to foreign flagships employing foreign seamen. Thus, the issue did not involve a conflict of law dispute, but rather a determination of the extent to which U.S. Labor law could apply to foreign employers. Similarly, *M/S BREMEN v. Zapata*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) involved a dispute over a contract for towing a barge from Los Angeles to Italy. The case did not involve conflict of laws or deference to the law of the flag because the Court upheld the validity of a forum selection clause entered into and agreed upon by two experienced and sophisticated businessmen as part of an arms length negotiation. Finally, *Brooks v. Hess Oil V.I. Corp.*, 809 F.2d 206 (3rd Cir.1987), involved a dispute over whether the court should apply labor law or maritime law to a contract dispute. The parties stipulated to the application of Liberian law.

While I recognize that the law of the flag is of "cardinal" importance in my determination, I find no factors which would lead me to find that it should be given any greater weight based upon any specific factors in this case. On the contrary, I

find that the law of the flag should receive less weight given the lack of any other connection to Vanuatu.

Under the *Lauritzen/Romero/Rhoditis* trilogy, I find that traditional strict adherence to the law of the flag has been superseded by a more pragmatic approach. Beginning with *Rhoditis*, courts have stressed the flexibility of the test and have begun to place greater emphasis on the contacts of the parties and the national interests involved rather than a strict application of the law of the flag. *See Dalla v. Atlas Maritime Co.*, 562 F.Supp. 752, 755 (C.D.Cal.1983) *aff'd* 771 F.2d 1277 (9th Cir. 1985) (law of flag given little weight in light of extensive U.S. base of operations). *See also Zipfel*, 832 F.2d at 1482 and *Phillips*, 632 F.2d at 85 (discussed *supra*); and *Hernandez*, 716 F.Supp. at 944–45 (base of operations favored over law of flag); *Compare Villar*, 782 F.2d at 1480 (Philippine law of flag used as one factor in determining that U.S. law did not apply—court did not reach issue of applicable foreign law); and *Pereira*, 764 F.2d at 689 (Liberian law of flag followed in Jones Act case where other factors inconclusive and contract provided for application of Liberian law).

Accordingly, given plaintiffs' extensive ties to the Philippines and the absence of any other connection to Vanuatu, I find that the law of the flag should be accorded much less than its ordinary weight under the unique circumstances of this case.

(3) *Allegiance and Domicile of the Injured*

All plaintiffs are Philippine nationals who reside in the Philippines. Plaintiffs were recruited for service in Manila, and returned to the Phillippines following their discharge from the FIR GROVE.

(4) *Allegiance of the Shipowner*

The FIR GROVE is owned by Delica Shipping and operated by Inui Steamship Company. Delica is incorporated under the laws of Panama, but both Delica and Inui are owned by Japanese nationals. Inui has its place of business in Japan, and all officers and directors of both companies are Japanese.

#### (5) The Place of the Contract

In cases involving application of the Jones Act to tort claims, courts have noted that the place of the contract is of little or no significance. *Villar*, 782 F.2d at 1481; *Pereira*, 764 F.2d at 689. Forum selection clauses are accorded no weight as applied to tort claims. *Dalla*, 562 F.Supp. at 755.

However, this factor may take on heightened significance when considering plaintiffs' claims under their employment contracts. *See Villar*, 782 F.2d at 1481. The difficulty that arises with the application of the "place of contract" factor to this case, however, is that the parties disagree as to which contract applies. Plaintiffs were recruited in the Philippines and signed employment contracts in the Philippines with a Philippine manning agent. Both the individual contracts signed in Manila and the collective bargaining agreement executed by AMOSUP for the crew of the FIR GROVE provide for application of Philippine law in a Philippine forum. However, the Shipping Articles that were provided to plaintiffs upon boarding the FIR GROVE provide for application of the law of Vanuatu.

Because there is a conflict regarding the contract that defines the terms of plaintiffs' employment, I find neither forum selection clause dispositive. In the absence of those contractual provisions, I find that the fact that plaintiffs are all Philippine citizens who were recruited for service aboard the FIR GROVE by a manning agent in the Philippines tends to favor application of Philippine law, at least insofar as it relates to plaintiffs' claims for back wages.

#### (6) Inaccessibility of the Foreign Forum

Any dismissal of this action would necessarily be predicated upon defendants' submission to the jurisdiction of a foreign forum and the waiver of any jurisdictional defenses. *See Villar*, 782 F.2d at 1481. Thus, alternative forums are accessible.

#### (7) Base of Operations [13]

Defendants' "base of operations" requires a two prong inquiry into first, where defendants maintain their offices, and second whether defendants had "substantial and continuing" contacts with the forum.

In *Romero*, plaintiff was a Spanish seaman, aboard a Spanish flag vessel who was injured in a U.S. port and treated in the U.S. The Court affirmed the district court's determination that Spanish law, and not the Jones Act, applied and affirmed dismissal of the action on the grounds of *forum non conveniens*. In *Rhoditis*, plaintiff was a Greek national, working aboard a Greek ship that regularly engaged in voyages to and from the United States. Plaintiff was injured while the ship was in New Orleans. The Court held that the Jones Act was applicable. In distinguishing *Romero*, the Court noted that although the vessel owner was Greek, he had been a resident of the U.S. for over twenty years. In addition, the Court placed great emphasis on the fact that the shipowner maintained offices in New York and New Orleans and that all of its income was derived from shipping to U.S. ports so that its "base of operations" was in the U.S.[14]

In *Pereira*, the Ninth Circuit noted that although the defendant operated out of San Francisco, California, its ship "rarely called upon an American Port." Distinguishing *Rhoditis*, the court held that the facts in support of finding that the base of operations was in the U.S. were insufficient to overcome the Liberian law of the flag, and thus Liberian law should apply to plaintiff's injury claim.

---

**13.** *Lauritzen*'s seventh factor, the law of the forum, does not come into play until the *forum non conveniens* phase of the analysis.

**14.** Following the Supreme Court's decision in *Rhoditis*, the Fifth Circuit has indicated that the "base of operations" test is favored over the "law of the flag." *See Hernandez*, 716 F.Supp. at 944–45.

In this case, defendants' base of operations is in Japan and they maintain no offices in the United States. Plaintiffs joined the vessel in Japan. However, all voyages of the FIR GROVE were between Japan and the United States.

Although Professor Gilmore expressed some doubts as to the continued viability of the *Rhoditis* decision [15], he noted that "[w]hile a flat overruling of *Rhoditis* appears to be unlikely, extension of the base of operations doctrine to enterprises less clearly linked to the U.S. appear to be equally unlikely." Gilmore & Black, *supra*, at 475.

In light of the foregoing, I find that the base of operations in this case is Japan. Although there is evidence of continuous and systematic contacts with the U.S., defendants maintained no offices or employees in this country.

## CONCLUSION

In light of the foregoing factors, I find that under a conflict of law analysis, U.S. law does not apply to the Joses' claims under the Jones Act or general maritime law, or to plaintiffs' blacklisting or common law claims.[16] Thus, I will next turn to defendants' motions to dismiss plaintiffs' personal injury and blacklisting claims under the doctrine of *forum non conveniens.* Because the application of the doctrine requires a balance of both private and public national interests, my determination of whether the law of the Philippines or the law of Vanuatu should apply will be addressed further, *infra.*

The law to be applied to plaintiffs' claims for back wages will also be that of either the Philippines or Vanuatu. In light of the tendency towards upholding forum selection clauses, and since both contracts at issue contain conflicting forum provisions, I find that genuine issues exist as to the law to be applied to plaintiffs' back wage claims. Accordingly, plaintiffs' motion for summary judgment as to the application of the law of Vanuatu to their employment contract claims is denied.

## III. *Forum Non Conveniens* [17]

District courts have broad discretion to retain or refuse to retain jurisdiction under the *forum non conveniens* doctrine. *Canada Malting Co. v. Paterson Steamships*, 285 U.S. 413, 418, 52 S.Ct. 413, 76 L.Ed. 837 (1932); *Dalla*, 562 F.Supp. at 757. This discretion is to be exercised "with regard to what is right and equitable under the circumstances and the law and directed by the reason and conscience of the judge as to a just result." *Dalla*, 562 F.Supp. at 757, *citing Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931). Defendants bear the burden of producing sufficient evidence to justify this court's refusal to retain jurisdiction. *Dalla*, 562 F.Supp. at 757, *citing Philippine Packing Corp. v. Maritime Co. of Philippines*, 519 F.2d 811, 812 (9th Cir. 1975).

In conducting this test, I must balance public and private interest factors identified in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91

---

**15.** *Rhoditis,* the one case in the trilogy in which U.S. law was held to be applicable to a foreign seaman, was a 5–4 decision written by Justice Douglas who had dissented in both *Lauritzen* and *Romero.*

**16.** For the purpose of the *forum non conveniens* analysis, I need only determine that U.S. law does not apply. *Villar,* 782 F.2d at 1482. I need not determine which nation's laws will ultimately apply to the merits of the case. *Id.*

**17.** I note at the outset of this discussion that while I must determine the applicable choice of law, it is not at all clear whether I should inquire into the application of *forum non conve-*

*niens* after finding the existence of mandatory jurisdiction over plaintiffs' good faith wage claims. *See Abraham,* 681 F.2d at 453 (jurisdiction over personal injury claim made in same suit "required" if court has jurisdiction over wage claim); *Hernandez,* 716 F.Supp. at 943 (court "must" retain jurisdiction over all other claim in case where jurisdiction over wage claims mandatory); *But See Dutta,* 528 F.2d at 1260–61 (jurisdiction as to personal injury claims "should" be retained).

However, to aid counsel in understanding my views on the subject, and to avert further motions to dismiss, clarify or reconsider, I will address the application of *forum non conveniens* to this conflict *infra.*

L.Ed. 1055 (1947). *Villar,* 782 F.2d at 1482. Relevant private interest factors include: the relative ease of access to sources of proof, availability of witnesses and "all other practical problems that make a trial of a case easy and inexpensive." *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. Relevant public interests include the burden on a court and jury with no relation to the litigation; the local interest in having the case decided at home; and the deference to a forum that is at home with the governing law. *Id.* 330 U.S. at 508–509, 67 S.Ct. at 843.

In *Kearney v. Savannah Foods & Industries, Inc.,* 350 F.Supp. 85 (S.D.Ga.1972) an Irish administratrix of a deceased Irish seaman filed a libel for wrongful death against an Irish vessel owner, the manufacturer of a catwalk and the Georgia corporation that maintained the catwalk. The Irish vessel owner moved to dismiss the action on the basis that the action against it should be adjudicated in Ireland. In denying this motion, Judge Lawrence eloquently expressed his pragmatic approach as follows:

> "To decline jurisdiction in this case would leave the action between the administratrix and the American defendant to be tried in this country. Cutting a lawsuit in two and litigating the halves in different countries strikes me as an anfractuous way to handle litigation crying out for single rather than piecemeal solution. I conclude that the interests of justice will be more effectively, expeditiously and inexpensively served by retaining jurisdiction over the foreign parties."

*Kearney,* 350 F.Supp. at 88.

In light of my finding that I have jurisdiction over plaintiffs' claims for back wages, I concur with Judge Lawrence in deciding that the private interest factors weigh heavily in favor of retaining jurisdiction over the pendent claims. This is particularly so as to plaintiffs' claims for blacklisting which I previously found de-

rive from a "common nucleus" of facts since the blacklisting allegedly occurred in retaliation for the action to recover wages. Judicial economy, deference to plaintiffs' choice of forum and the avoidance of unnecessary, duplicative and expensive litigation all support retention of jurisdiction in a single forum. *See Pereira,* 764 F.2d at 690 (deference to plaintiff's choice of forum); *Dutta,* 528 F.2d at 1261 (because plaintiff asserted valid wage claim court should retain jurisdiction over personal injury claim); *Cf. Kanagaratnam v. Vialogro Compania Naviera, S.A.,* 1985 AMC 865, 871, 1984 WL 735 (S.D.N.Y.1984) (court retained wage claims but dismissed personal injury claim based upon absence of American contacts).

In addition, the Ninth Circuit has held that courts must "compare the substantiality of our interest in a given transaction with that of other nations ... when links to the U.S. are weak and the interests of another sovereign are substantial," courts should not apply U.S. law. *Phillips,* 632 F.2d at 86. Defendants contend that the interest of the Philippines in the resolution of this dispute is so great that "special circumstances" exist which dictate dismissal from this forum. Therefore, I shall now turn to the public interest factors enumerated in *Gulf Oil.*

I have carefully reviewed the affidavits of Carlo A. Carag and Diosdado Reloj and the cases cited therein, as well as Article 217 of the Philippine Labor Code, Article XIII § 3 of the Philippine Constitution, and Executive Order No. 247 (dated July 24, 1987), relevant portions of the Vanuatu Constitution of 1980, and the Vanuatu Maritime Regulations. Based upon my review of those documents, I find that the interest of the Philippines in protecting its workers and regulating claims that arise out of the employment relationship is substantial and overrides the interest of the law of the flag of Vanuatu, insofar as plaintiffs' pendent claims for blacklisting and personal injury are concerned.[18] I further find that this

18. As noted previously because my determination of the law to be applied to plaintiffs' claims for back wages arising out of the alleged breaches of their employment contracts necessarily

involves resolution of conflicting forum selection clauses, my ruling on the law to be applied to plaintiffs' wage claims is reserved for trial.

public interest, in addition to my consideration of the *Lauritzen* factors set forth, *supra*, is so substantial that Philippine law should apply to plaintiffs' claims of blacklisting and the Joses' claims for personal injury which arise out of a work related incident.

However, in applying the *Gulf Oil* balance, I find that the private interest factors of convenience, judicial economy, costs of litigation and deference to the plaintiffs' choice of forum outweigh the interests of the Philippines in trying this case in a local court. Thus, this court shall assume the task of applying Philippine law to plaintiffs pendent claims. Accordingly, defendants' motions to dismiss are denied.

## IV. *Collateral Estoppel*

█ Plaintiffs also move for summary judgment as to the applicability of the shipping articles to their wage claims on the basis of collateral estoppel. Plaintiffs contend that the identical issue was litigated and decided by Judge Tanner in *Raby v. M/V PINE FOREST*, 1990 AMC 2441 (W.D.Wash.1990).[19]

█ The collateral estoppel doctrine was designed to save judicial and adversarial resources by eliminating relitigation of all "issues of fact or law that were actually litigated and necessarily decided." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir.1988). The offensive use of collateral estoppel refers to a situation in which a plaintiff seeks to foreclose a defendant from relitigating an issue litigated unsuccessfully against the same or a different party. *National Medical Enterprises, Inc. v. Sullivan*, 916 F.2d 542, 545, n. 2 (9th Cir.1990). The general rule is that a court should prohibit estoppel in cases where either: (1) plaintiff could have easily joined in the earlier action; or (2) the application of estoppel would be unfair to the

defendant. *Id.*, at 546, *citing Parklane*, 439 U.S. at 331, 99 S.Ct. at 651.

█ Further, where there is any doubt as to whether a specific issue was actually litigated, collateral estoppel is inappropriate. *Eureka Federal Savings & Loan v. American Casualty Co. of Reading, Penn.*, 873 F.2d 229, 233 (9th Cir.1989).

First, I find that collateral estoppel should not be applied here based upon the individual and distinctive nature of the employment contracts in this case. Cases in which the use of offensive collateral estoppel have been upheld typically involve the use of administrative findings in a subsequent private civil action for damages based upon the same, not similar, conduct. *See Parklane*, 439 U.S. at 332, 99 S.Ct. at 652 (use of SEC lawsuit by private plaintiff to estop defendant from denying securities violations); *Selectron, Inc. v. AT & T*, 587 F.Supp. 856, 858 (D.Or.1984) (use of FCC ruling to estop denial of antitrust violations). Although the facts and circumstances present in the *Pine Forest* may bear a resemblance to the facts in this case, they are not identical and do not derive from the same facts or circumstances as those before Judge Tanner.

Further, where relevant legal issues regarding jurisdiction and applicable law were not specifically addressed by the previous court, collateral estoppel is inappropriate. *See Eureka Federal S & L*, 873 F.2d at 234 (court declined to apply estoppel where previous district court disregarded other case law). Although Judge Tanner's finding represents his assessment of the evidence before him, several issues which have been critical to my opinions in this case were not addressed in the *Pine Forest* case. Although the ultimate conclusion as to the appropriateness of all decisions within this circuit on these cases rests with the Court of Appeals, I find that it would be unfair to the defendants for me

---

**19.** In Finding of Fact No. 19, Judge Tanner determined that:

"On January 31, 1989, the M/V Pine Forest was arrested in Tacoma, Washington. All plaintiffs except Silverio and Cabilton were aboard the

vessel. Plaintiffs were claiming back due wages *in accordance with the ITF Shipping Articles they had executed which were their contract of employment.*"
(emphasis added).

to apply Judge Tanner's conclusion to the applicability of the shipping articles.

Thus, even if collateral estoppel could apply to a separate contractual transaction involving the same defendant, I find that application of the doctrine is inappropriate in this case. Accordingly, plaintiffs' motion for partial summary judgment on the basis of collateral estoppel is denied.

## CONCLUSION

Based on the foregoing, I find that plaintiffs' claims for back wages have been asserted in good faith, and therefore, this court has subject matter jurisdiction over those claims. I further find that, under the doctrine of *forum non conveniens*, the private interests in maintaining a single action outweigh the public interests of the Philippines. Finally, I find that collateral estoppel based upon Judge Tanner's conclusion in the *Pine Forest* case is inappropriate and would be unfair to the defendants. Accordingly, defendants' motions to dismiss and plaintiffs' motion for summary judgment are denied.